RETIREMENT PROGRAM FOR EMPLOYEES OF
THE TOWN OF FAIRFIELD ET AL. *v.*
BERNARD L. MADOFF ET AL.
(AC 32216)

Bishop, Robinson and Peters, Js.

Argued May 19—officially released August 16, 2011

*Richard C. Robinson,* with whom were *Megan Youngling Carannante* and, on the brief, *David S. Golub,* for the appellants (plaintiffs).

*Stanley A. Twardy, Jr.,* with whom were *Thomas D. Goldberg* and, on the brief, *Daniel J. Fetterman,* pro hac vice, and *Adam K. Grant,* pro hac vice, for the appellee (defendant Jeffrey H. Tucker).

*Stanley A. Twardy, Jr.,* with whom were *Frank J. Silvestri, Jr.,* and, on the brief, *Madeleine F. Grossman,*

*Glenn M. Kurtz,* pro hac vice, and *Andrew W. Hammond,* pro hac vice, for the appellee (defendant Walter M. Noel, Jr.).

*H. James Pickerstein,* with whom, on the brief, were *Daniel J. Klau, Charles T. Spada,* pro hac vice, and *Jeannie Rose Rubin,* pro hac vice, for the appellee (defendant Peter B. Madoff).

*Opinion*

BISHOP, J. The plaintiffs, the town of Fairfield and two employee retirement programs,[1] appeal from the trial court's judgment granting the motions to dismiss filed by the defendants Walter M. Noel, Jr., Jeffrey H. Tucker and Peter B. Madoff.[2] On appeal, the plaintiffs claim that the court improperly concluded that it lacked subject matter jurisdiction on the ground that the plaintiffs' claims were derivative in nature. We affirm the judgment of the trial court.

The following factual and procedural history, as set forth by the trial court, is relevant to the resolution of the issues on appeal. Bernard L. Madoff (Madoff) is the former investment manager and founder of Bernard L. Madoff Investment Securities, LLC. In December, 2008, Madoff admitted, in connection with certain criminal charges brought against him, that he orchestrated a massive Ponzi scheme in which funds entrusted to him

[1] The two programs are the Retirement Program for Employees of the Town of Fairfield and the Retirement Program for Police Officers and Firemen of the Town of Fairfield.

[2] The original complaint named sixteen defendants. One individual, Andres Piedrahita, was never served and is not a party to this appeal. The other named defendants were: Bernard L. Madoff, Tremont Partners, Inc., Tremont Group Holdings, Inc., Oppenheimer Acquisition Corp., Maxam Capital Management, LLC, Maxam Capital GP LLC, Maxam Capital Management Limited, Sandra L. Manzke, Robert I. Schulman, Walter M. Noel, Jr., Jeffrey H. Tucker, Peter B. Madoff, Ruth Madoff, Mark D. Madoff and Andrew H. Madoff. Only Noel, Tucker and Peter B. Madoff are parties to this appeal. We will refer to individual defendants by name unless otherwise indicated in the opinion.

were not actually invested, but, rather, were utilized to pay other investors' requests for the redemption of principal and profits and to fund his extravagant lifestyle.[3] Madoff is currently incarcerated as a result of his fraudulent conduct and a bankruptcy stay is in effect as to the claims against him in this action.[4]

For many years, Tremont Partners, Inc. (Tremont Partners), served as the plaintiffs' investment advisor.[5] Sandra L. Manzke, who was the president of Tremont Partners, was the individual with whom the plaintiffs dealt in investing their money. Relying on Manzke's counsel, the plaintiffs invested their funds in a hedge fund established by Tremont Partners, which, in turn, invested its assets with Madoff. The plaintiffs did not invest their funds directly with Madoff. When Manzke left Tremont Partners in 2005, she formed a new investment and consulting firm, Maxam Capital Management, LLC, which established the Maxam Absolute Return Fund, LP (Maxam Fund). Pursuant to Manzke's advice, the plaintiffs withdrew their funds from the Tremont Partners hedge fund and invested them in the Maxam Fund, which, in turn, invested the plaintiffs' funds with Madoff.[6]

Noel and Tucker (Fairfield Greenwich defendants) are partners, principals and members of the executive

---

[3] A Ponzi scheme has been described as "a pyramid scheme where earlier investors are paid from the investments of more recent investors, rather than from any underlying business concern, until the scheme ceases to attract new investors and the pyramid collapses." *Eberhard* v. *Marcu*, 530 F.3d 122, 132 n.7 (2d Cir. 2008).

[4] The plaintiffs withdrew their claims against Madoff's wife, Ruth Madoff, in August, 2009.

[5] The plaintiffs withdrew their claims as to Tremont Partners, Tremont Group Holdings, Inc., Oppenheimer Acquisition Corp. and Robert I. Schulman in February, 2010.

[6] Manzke and Maxam Capital Management, LLC, Maxam Capital GP LLC, and Maxam Capital Management Limited collectively are referred to herein as the Maxam defendants.

committee or board of directors of the Fairfield Greenwich Group, an asset management company that manages and solicits investments for its own hedge funds and other hedge funds that invested with Madoff. Because the Maxam Fund and Fairfield Greenwich Group made their investments solely through other funds, they are referred to as "feeder funds." Unlike the Maxam defendants; see footnote 6 of this opinion; the Fairfield Greenwich defendants did not have any contact with the plaintiffs or any involvement with their funds or investments.

Peter B. Madoff is Bernard Madoff's brother. He was a co-owner of Madoff's investment firm and served as its senior managing director, director of trading and chief compliance officer.

The plaintiffs commenced this litigation by way of a twenty-nine count complaint filed March 30, 2009. The plaintiffs claim that several of the defendants wrongfully participated in "feeding" funds to Madoff, which enabled him to continue running his Ponzi scheme. Although the plaintiffs allege that the Maxam defendants dealt directly with the plaintiffs in inducing them to invest in the Maxam Fund, which, in turn, invested with Madoff, they make no similar allegations regarding the Fairfield Greenwich defendants. The plaintiffs claim, nevertheless, that the actions of the Fairfield Greenwich defendants furthered Madoff's scheme. The plaintiffs allege that Peter B. Madoff intentionally utilized his management authority at Madoff's firm to further Madoff's fraudulent scheme. The plaintiffs make similar claims as to Madoff's sons, Andrew H. Madoff and Mark D. Madoff.

The Maxam defendants, the Fairfield Greenwich defendants, Peter B. Madoff, Mark D. Madoff and Andrew H. Madoff moved to dismiss the plaintiffs' claims on the basis that the court lacked subject matter

jurisdiction. These defendants asserted that the plaintiffs lacked standing to pursue their claims because they are derivative in nature. The court denied the motion to dismiss as to the Maxam defendants on the basis of its conclusion that the plaintiffs had alleged a sufficiently individualized harm against the Maxam defendants to distinguish them from other investors because of their long-term relationship with Manzke and their reliance on her investment advice. The court determined, however, that the plaintiffs lacked standing to pursue their claims as to the Fairfield Greenwich defendants and Peter B. Madoff, Mark D. Madoff and Andrew H. Madoff because they were derivative. The court, therefore, granted the motions to dismiss as to those parties.

The plaintiffs have appealed the trial court's judgment dismissing their claims as to the Fairfield Greenwich defendants and Peter B. Madoff, contending that the court improperly concluded that their claims against those defendants were derivative.[7] Specifically, the plaintiffs assert that their claims were not derivative because they had alleged in their complaint that the Fairfield Greenwich defendants acted in concert not only with Madoff, but also with the Maxam defendants and other feeder funds, in inducing them to invest in the Maxam Fund. We do not agree.

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § 10-31 (a). [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 63–64, 946 A.2d 862 (2008). "When a . . . court decides a jurisdictional

---

[7] On January 6, 2011, the plaintiffs withdrew their appeal as to Mark D. Madoff and Andrew H. Madoff.

question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 122 Conn. App. 438, 443, 998 A.2d 838, cert. granted on other grounds, 298 Conn. 921, 4 A.3d 1227, 5 A.3d 486 (2010).

"It is well established that [a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of the question of [a] plaintiff's standing is plenary." (Citations omitted; internal quotation marks omitted.) *Megin* v. *New Milford*, 125 Conn. App. 35, 37, 6 A.3d 1176 (2010).

"[A]s a general rule, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect." *Connecticut State Medical Society* v. *Oxford Health Plans (CT), Inc.*, 272 Conn. 469, 481, 863 A.2d 645 (2005). "[I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. Where, for example, the harms asserted to have been suffered

directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347–48, 780 A.2d 98 (2001).

Because the plaintiffs lost their investment in the Maxam Fund, and the Maxam Fund is a Delaware partnership, the parties agree that Delaware law controls in determining whether the plaintiffs' claims are derivative.[8] The Delaware Supreme Court has "set forth the analytical framework for ascertaining whether a cause of action is direct or derivative. . . . [T]his determination can be made by answering two questions: [W]ho suffered the alleged harm . . . and who would receive the benefit of any recovery or other remedy . . . ? If the corporation alone, rather than the individual stockholder, suffered the alleged harm, the corporation alone is entitled to recover, and the claim in question is derivative. Conversely, if the stockholder suffered harm independent of any injury to the corporation that would entitle him to an individualized recovery, the cause of action is direct." (Internal quotation marks omitted.) *Feldman* v. *Cutaia*, 951 A.2d 727, 732 (Del. 2008).

"Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature. The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct . . . . In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large." Id., 733. To maintain a direct claim, a "stockholder must

___

[8] Regardless of the appropriate choice of law, the parties also agree that Connecticut law and Delaware law as to this issue are substantially the same.

demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Tooley* v. *Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004).

The plaintiffs contend on appeal that their claims as to the Fairfield Greenwich defendants and Peter B. Madoff are not derivative because they are not premised upon an injury to the Maxam Fund, but, rather, on the losses that they suffered as a result of the actions of those defendants in wrongfully inducing them to invest in the Maxam Fund. The plaintiffs claim that it is this behavior that distinguishes their claims from those made by other Maxam Fund investors and makes their claim direct rather than derivative.

The complaint filed by the plaintiffs belies their claim on appeal. Although the plaintiffs' complaint is rich with allegations that the Fairfield Greenwich defendants acted in concert with Madoff or in furtherance of Madoff's fraudulent plan,[9] it is devoid of any allegation that the Fairfield Greenwich defendants played any role in inducing the plaintiffs to invest in the Maxam Fund or in any other feeder fund, or with Madoff directly.[10] The plaintiffs' claims against the Fairfield Greenwich defendants can be found in three counts. In count four of their complaint, the plaintiffs allege that the Fairfield Greenwich defendants are liable for damages for statutory theft; in count eight, for aiding and abetting

---

[9] We note that the plaintiffs acknowledge that the feeder fund defendants did not know that Madoff was running a Ponzi scheme, but, rather, allege that they should have known that he was involved in other illegal activity involving the funds fed to him.

[10] In fact, the plaintiffs represented to the trial court that they were not claiming a conspiracy among the feeder fund defendants. As Peter B. Madoff notes in his brief, although "[t]he interpretation of pleadings is always a question of law for the court . . . [i]f the parties at trial have adopted a certain construction of the pleadings . . . we should give deference to that construction." (Citations omitted; internal quotation marks omitted.) *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 795–96, 807 A.2d 467 (2002).

Madoff's theft of their funds; and in count fifteen, for a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Although they make the cursory claim, in the fourth count of their complaint, that the "illegal conduct of the Fairfield Greenwich . . . defendants, acting in concert with . . . Madoff, the other feeder fund defendants and Peter B. Madoff," resulted in their "lost investments, lost investment opportunities and losses from payment of unwarranted fees," the complaint is bereft of any allegation that the Fairfield Greenwich defendants collaborated with the Maxam defendants or any other party in inducing the plaintiffs to invest in the Maxam Fund or any other fund. In the absence of such an allegation, the plaintiffs have failed to set forth any claim to distinguish theirs from the other Maxam Fund investors. Rather, on appeal, they have simply attempted to recast their derivative claim as a direct claim.

Similarly, the plaintiffs fail to allege that Peter B. Madoff played any role in inducing them to invest in the Maxam Fund. The plaintiffs' allegations as to Peter B. Madoff are based on the claim that his actions furthered the fraudulent scheme of his brother. Because the harm suffered by the plaintiffs is based solely on the loss sustained by the Maxam Fund, and there is no claim that Peter B. Madoff played any role in inducing the plaintiffs to invest in the Maxam Fund, the plaintiffs' claims in this regard are derivative.

On the basis of the foregoing, the court properly determined that the plaintiffs' claims against the Fairfield Greenwich defendants and Peter B. Madoff were derivative and, accordingly, the plaintiffs lack standing to bring those claims. Accordingly, the court properly dismissed the plaintiffs' claims as to those defendants.

The judgment is affirmed.

In this opinion the other judges concurred.