## JOHN T. O'REILLY ET AL. *v.* NICOLINO VALLETTA ET AL.
## (AC 34054)

Bear, Sheldon and West, Js.

Argued September 11—officially released November 20, 2012

*John T. O'Reilly*, pro se, the appellant (named plaintiff).

*Daniel J. Krisch*, with whom were *Agron Etemi* and, on the brief, *Thomas P. Lambert*, for the appellee (defendant Robert A. Pformer).

*Opinion*

SHELDON, J. The dispositive issue in this case is whether the plaintiff, John T. O'Reilly,[1] the owner of HUB Associates, LLC (HUB), a limited liability company that leased commercial premises for the operation of a restaurant in Branford, has standing to sue the defendant, Robert A. Pformer,[2] a board member of the condominium association that managed the leased premises, for an alleged violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

---

[1] O'Reilly and HUB Associates, LLC, O'Reilly's company, filed a two count complaint alleging breach of contract against Nicolino Valletta and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (CUTPA), against Valletta and Robert A. Pformer. The trial court rendered judgment on the CUTPA count in favor of Pformer, which was an appealable final judgment pursuant to Practice Book § 61-3. Although the trial court rendered judgment against both O'Reilly and HUB, the record on appeal indicates that only O'Reilly filed this appeal, and, accordingly, this opinion solely relates to O'Reilly's standing to sue Pformer for a violation of CUTPA; it does not address HUB's standing.

[2] The trial court rendered judgment in favor of Pformer on count two of O'Reilly's and HUB's complaint after it granted Pformer's motion to strike the claim, resulting in a final judgment in favor of Pformer. The claims against Valletta are still pending.

(CUTPA), based on Pformer's alleged interference with HUB's efforts to advertise its business on the leased premises. The case is now before this court on O'Reilly's appeal from the trial court's judgment in favor of Pformer on that claim, which was rendered after the court granted Pformer's motion to strike that claim on the ground that it failed to state a claim on which relief could be granted under CUTPA. The court ruled, more particularly, that the alleged conduct on which the claim was based involved the management of a condominium association and did not constitute "acts or practices in the conduct of any trade or commerce," within the meaning of General Statutes § 42-110b (a), as a matter of law. Although Pformer contends that the trial court's analysis of the sufficiency of the challenged claim was legally correct, he now urges this court, for the first time on appeal, to rule that O'Reilly lacked standing to bring that claim against him and, thus, that the claim should be dismissed for lack of subject matter jurisdiction.[3] Because we agree with Pformer that O'Reilly lacked standing to bring the challenged CUTPA claim against him, we vacate the trial court's judgment on the merits of that claim and remand the case to the trial court with direction to dismiss the second count against Pformer for lack of subject matter jurisdiction.

The following facts, alleged in the complaint filed by O'Reilly and HUB, are pertinent to the resolution of this appeal. On December 24, 2007, O'Reilly, "through his LLC, [HUB]," entered into a lease agreement with Nicolino Valletta, under which HUB rented a commercial condominium owned by Valletta at 420 East Main Street in Branford, for the purpose of operating a restaurant. Although the lease term began on January 1, 2008,

---

[3] The issue of subject matter jurisdiction "may be raised by a party . . . at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 696, 6 A.3d 52 (2010).

and terminated on December 31, 2010, HUB was not required to make rental payments until May 1, 2008, in recognition of the fact that it would need time to prepare the premises for the operation of a restaurant.

As the owner of HUB, O'Reilly completely renovated the leased premises to prepare it for the opening of the new restaurant. That involved, inter alia, the installation of two new roofs on the rented building, for which Valletta refused to pay, despite his contractual obligation to do so under article 14 of the lease agreement. Valletta also refused to pay for a new heating system for the rented building, as requested by O'Reilly, on behalf of HUB, under article 14 of the lease agreement, although over 50 percent of the building was unheated and, thus, unsuitable for use as a restaurant. Notwithstanding these and other difficulties he had in dealing with Valletta during the lease period, O'Reilly cooperated with Valletta throughout that period in an effort to persuade him to sell the leased premises to HUB.

After spending over $140,000 for renovations and new equipment for the leased premises in order to open HUB's new restaurant therein, O'Reilly posted advertising signs for the new restaurant on the premises. After the signs were posted, Pformer began to complain about them. Pformer then personally attempted to remove the signs despite their approval by the town of Branford. Thereafter, without giving notice to O'Reilly of his intention to do so, Pformer conducted a hearing of the condominium association board (board) with respect to the signs, at which the board imposed a fine on the unit owner, which ultimately was levied against HUB, for displaying them. Following the hearing, Pformer and Valletta jointly removed the signs from the leased premises, thereby allegedly harming the restaurant's business and causing it to incur costs to build new advertising signs.

On the basis of the foregoing allegations, O'Reilly and HUB filed a two count complaint against Pformer and Valletta on or about June 24, 2011. In the first count of the complaint, they alleged that Valletta had violated the lease agreement and breached the implied covenant of good faith and fair dealing arising under it by requiring them to expend over $140,000 to renovate the leased premises, later denying that they had made such payments, and ultimately attempting to evict them from the premises to promote his own failing financial interests. In count two of the complaint, O'Reilly and HUB complained: that, by removing the advertising signs from the leased premises, Pformer and Valletta had attempted to deprive them of their "fair business rights"; that, by denying them notice of the hearing before the condominium board, Pformer had interfered with their contractual rights under the lease agreement; and that, by their collective and individual conduct, Pformer and Valletta had engaged in unfair and deceptive trade practices that caused them serious financial damage, in alleged violation of CUTPA.

On August 16, 2011, Pformer filed a motion to strike the second count for failure to allege "acts or practices in the conduct of any trade or commerce"; General Statutes § 42-110b (a); as required to prove a violation of CUTPA. The trial court granted the motion to strike on October 3, 2011. Pformer subsequently filed a motion for judgment on the stricken count. O'Reilly and HUB filed an objection to Pformer's motion for judgment. On October 31, 2011, the trial court granted Pformer's motion for judgment. This appeal followed.

Pformer now claims that O'Reilly's CUTPA claim against him, as pleaded in the second count of the complaint, should be dismissed for lack of subject matter jurisdiction because O'Reilly lacked standing to bring that claim. "Subject matter jurisdiction involves the authority of the court to adjudicate the type of

controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 696, 6 A.3d 52 (2010).

"[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 64, 946 A.2d 862 (2008). "One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Retirement Program for Employees of the Town of Fairfield* v. *Madoff*, 130 Conn. App. 710, 716, 26 A.3d 93 (2011). "[A]s a general rule, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect." *Connecticut State Medical Society* v. *Oxford Health Plans (CT), Inc.*, 272 Conn. 469, 481, 863 A.2d 645 (2005).

"It is axiomatic that a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim." *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 346, 780 A.2d 98 (2001). "Standing is the legal right to set judicial machinery in motion. . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury." (Citations omitted;

internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 567–68, 775 A.2d 284 (2001).

"The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Thus, to state these basic propositions another way, if the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. [When], for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." (Citations omitted; internal quotation marks omitted.) *Ganim* v. *Smith & Wesson Corp.*, supra, 258 Conn. 347–48.

A limited liability company is a distinct legal entity whose existence is separate from its members. See *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 147, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). A limited liability company has the power to sue or to be sued in its own name; see General Statutes §§ 34-124 (b) and 34-186; or may be a party to an action brought in its name by a member or manager. See General Statutes § 34-187. A member or manager, however, may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company. See General Statutes § 34-134 ("[a] member or manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company, except

where the object of the proceeding is to enforce a member's or manager's right against or liability to the limited liability company or as otherwise provided in an operating agreement").

In the case at bar, the CUTPA count as to Pformer is based entirely on his alleged violations of the business rights and expectations of O'Reilly's company, HUB, arising from HUB's status as the lessee of the leased premises and the owner and operator of the restaurant thereon. Pformer's alleged removal of signs from the premises was directed at HUB, not at O'Reilly personally, both because HUB was the sole lessee of the subject premises and because O'Reilly had posted the signs in question thereon while acting as HUB's owner and agent, for the purpose of advertising HUB's restaurant business. The losses allegedly caused by Pformer's actions thus were losses to HUB, not to O'Reilly personally, for they consisted of lost revenue for HUB's restaurant business and costs incurred to build new signs to advertise the business.

Similarly, with respect to Pformer's alleged manipulation of condominium association procedures to conduct an unnoticed hearing as to the posting of signs on HUB's leased premises, in alleged violation of HUB's rights arising under the lease, any violation of those rights occasioned by such conduct affected only HUB; for it alone, and not O'Reilly, was a party to the lease agreement,[4] and the complaint contained no allegation that Valletta owed any obligation to O'Reilly personally under that agreement.[5] Hence, although it can be surmised that O'Reilly, as owner of HUB, may have been

---

[4] O'Reilly and HUB concede in the first paragraph of their complaint that O'Reilly rented a condominium from Valletta "through his LLC, HUB Associates."

[5] Pformer argues that "[t]he lease itself did not, for example, give O'Reilly any option rights at its termination." We note that the complaint alleged that throughout the course of O'Reilly's business relationship with Valletta, "the parties repeatedly discussed the possibility of . . . O'Reilly purchasing the premises from . . . Valletta and entered into several agreements to that

harmed indirectly by Pformer's alleged violations of its contractual rights and interests under the lease agreement, the only direct harm caused by such conduct was suffered by the company itself. Pformer claims, on that basis, that the proper party to bring an action complaining of such conduct was HUB, not O'Reilly. We agree.

O'Reilly lacked the requisite direct personal interest in the lease, the leased premises or the restaurant business conducted by his company on those premises to confer standing on him to complain of any breach of the lease or of any harm to the business resulting therefrom. Accordingly, we conclude that the trial court lacked subject matter jurisdiction over the claim based on those issues, as alleged by O'Reilly in the second count of the complaint. The court improperly rendered judgment for Pformer on the merits of O'Reilly's CUTPA claim. The claim should have been dismissed for lack of subject matter jurisdiction rather than decided on its substantive merits.

The form of the judgment is improper as to the count of the complaint alleging a CUTPA claim against Pformer, the judgment is reversed as to that count and the case is remanded with direction to dismiss that count for lack of subject matter jurisdiction.

In this opinion the other judges concurred.

effect." Despite the implication that Pformer's conduct in some way harmed O'Reilly's future interest in purchasing the restaurant, a copy of the real estate purchase and sale agreement, which was attached to the complaint, lists HUB as the buyer rather than O'Reilly.