851 So.2d 199 (2003)
David F. BRAUN, Appellant/Cross-appellee,
v.
BUYERS CHOICE MORTGAGE CORPORATION, by and through Matthew McALOON, a shareholder; Matthew McAloon, Individually; and McAloon Mortgage Company, Inc., Appellees/Cross-appellants.
Michael Warnstedt and Buyers Choice Mortgage Corporation, Appellees.
No. 4D01-2516.
District Court of Appeal of Florida, Fourth District.
June 25, 2003.
Rehearing Denied August 19, 2003.
*201 Harris K. Solomon and Jonathan M. Streisfeld of Brinkley, McNerney, Morgan, Solomon & Tatum, LLP, Fort Lauderdale, for appellant/cross-appellee.
Robert Cooper of Robert H. Cooper, P.A., Aventura, for appellees/cross-appellants.
STONE, J.
We reverse a final judgment entered against David Braun in favor of Matthew McAloon, individually, and as a shareholder of McAloon Mortgage Co., Inc. We also reverse the final judgment insofar as it dismissed claims brought on behalf of Buyers Choice Mortgage Corporation ("Buyers Choice") by McAloon in his capacity as shareholder.
David Braun, together with Michael Warnstedt, who is not a party to this appeal, were joint shareholders of a real estate corporation called Braun and May Realty, Inc. (Braun & May). Braun & May purchased Buyers Choice, a mortgage brokerage business. Buyers Choice was wholly owned by Braun & May until February 1, 1996, when McAloon issued a check from his personal account to Buyers Choice for $25,000 in exchange for 40% ownership of the corporation.[1]
It was anticipated that Braun & May would offer to its 190 sales agents the opportunity to become employees of Buyers Choice, and that Braun and Warnstedt would serve as directors while McAloon would serve as president.
Shortly after McAloon became the president, Braun issued a check from Buyers Choice's account for $25,000 to Braun & May. McAloon knew that the money had been withdrawn and continued to operate Buyers Choice. He even withdrew money from a McAloon Mortgage account to loan Buyers Choice funds to pay the salaries of Buyers Choice employees and cover other expenses. Although Braun knew McAloon was funding the operations at Buyers Choice, he did not reimburse McAloon or McAloon Mortgage for any of these expenses.
On September 1, 1996, the Buyers Choice mortgage lending license expired. On or about November 1, 1996, Braun sold the assets of Braun & May to Gimelstob Realty, Inc. for $1,575,000. This came as a surprise to McAloon who learned about the deal while perusing the "Broward Review." McAloon filed suit against Braun and Warnstedt, individually, and as directors of Buyers Choice. McAloon Mortgage and Buyers Choice were also named as plaintiffs. In his six-count second amended complaint, McAloon alleged variations of common law breach of fiduciary and directors' duty and breach of statutory directors' duty by the defendants.
Counts I and II were brought on behalf of Buyers Choice for general damages, alleging that the defendants had breached their fiduciary and statutory obligations by permitting Gimelstob Realty to acquire Braun & May's assets, thereby defeating the purpose of Buyers Choice and causing it to cease operations.
Counts III and IV were brought by McAloon, individually, and alleged that the defendants had breached their fiduciary and statutory obligations to McAloon by permitting Gimelstob Realty to acquire Braun & May. In these counts, McAloon specifically requested damages in the amount of $25,000. At the non-jury trial, *202 McAloon acknowledged that there was no provision in his written agreements with Braun & May which restricted the transfer of Braun & May stock.
Counts V and VI were brought on behalf of McAloon Mortgage as a creditor of Buyers Choice and alleged that the defendants' actions constituted wilful mismanagement resulting in Buyers Choice's insolvency.
While the suit was pending, Buyers Choice was administratively dissolved on September 26, 1997, for failure to file its annual report. Because Buyers Choice had been administratively dissolved, the court dismissed with prejudice counts I and II of the second amended complaint involving derivative claims.
After disposing of counts I and II, the court announced that the only real remaining issue was whether McAloon or McAloon Mortgage should be reimbursed for any expenses as a result of a breach of fiduciary duty. It explained that damages for the breach were going to be "pretty much capped to $25,000" and neither attorney indicated any objection.
The parties did not agree as to the intended purpose of the $25,000 payment. According to Braun, the money was intended to compensate Braun & May; McAloon claimed it was intended as capital for Buyers Choice. After reading the stock purchase agreement which designated Buyers Choice and not Braun & May as the seller, the court found that "[t]he greater weight of the evidence goes to Mr. McAloon on this issue and the court finds that Braun and May had no right to withdraw the $25,000." The court deemed Braun's withdrawal a breach of his fiduciary duty to McAloon. It was on this basis alone that the court entered a judgment in favor of McAloon and McAloon Mortgage. The court chalked the other expenses up to poor investment, and Braun was ordered to pay the appellees $25,000 plus interest.
Braun claims the court erred in entering judgment in favor of Appellees with respect to claims III through VI. We agree. We also agree with Appellees that the court erred in dismissing its derivative claims in counts I and II.
Initially, as to counts V and VI, the trial court's entry of judgment in favor of McAloon Mortgage was error. Braun did not owe a fiduciary duty to McAloon Mortgage at the time of the withdrawal. Directors of a corporation are generally not personally liable to creditors for breach of fiduciary relationship, nor are they liable for mismanagement or waste of assets. Skinner v. Hulsey, 103 Fla. 713, 138 So. 769 (1931). We note that there is no claim of fraud in the instant case.
With respect to the remaining counts, III and IV, the court found that Braun had breached his fiduciary duty to McAloon by withdrawing the $25,000 from Buyers Choice and McAloon was entitled to have his investment back. In contrast to the trial court's reasoning, McAloon had argued at trial that Braun's wrongful withdrawal of the money caused Buyers Choice to lose its license and become administratively dissolved. This argument differs from the theory of liability asserted in the second amended complaint, that the downfall of Buyers Choice was caused by Braun's sale of Braun & May's assets. In fact, the trial court even dismissed this allegation when it said, "I don't think that you can say but for the [$25,000] withdrawal which took place in February of 1996, that that [sic] then caused some seven months later, the failure of Buyers Choice to renew it's [sic] license." Therefore, it appears the court was not linking the withdrawal to the sale of Braun & May's assets, as Appellees did in their complaint.
*203 We reject McAloon's contention that the issue was tried by consent. "[A]n unpled theory may not be tried by implied consent when the evidence presented at trial is relevant to other issues which are properly being tried." Schipani v. Seagraves, Inc., 772 So.2d 591, 593 (Fla. 5th DCA 2000); Cedars Med. Ctr., Inc. v. Ravelo, 738 So.2d 362, 368 (Fla. 3d DCA 1999). The record reflects that neither the court nor the parties are clear on what the issue was, despite the court's attempts to clarify and narrow the issues. Although the parties share responsibility for the confusion as to the precise issues before the court, it does not appear from the record that the issue ruled on was tried by consent.
Further, counts III and IV should have been filed as shareholder derivative claims. Generally, a shareholder cannot sue in the shareholder's name for injuries to a corporation unless there is a special duty between the wrongdoer and the shareholder, and the shareholder has suffered an injury separate and distinct from that suffered by other shareholders. E.g., Fort Pierce Corp. v. Ivey, 671 So.2d 206, 207 (Fla. 4th DCA 1996); Harrington v. Batchelor, 781 So.2d 1133, 1135 (Fla. 3d DCA 2001).
Appellees argue that the shareholder agreement provides a direct fiduciary obligation from Braun and Braun & May to McAloon because Braun was the legal representative of Braun & May and was, thus, bound by the terms of the agreement. Even if this were true, Braun did not breach the particular fiduciary duty in question. The terms of the parties' agreement prohibited either party from profiting to the detriment of the other by appropriating a "commercial opportunity which becomes available to him by reason of his association with [Buyers Choice]." This agreement was not breached, here, as there is no evidence that the deal with Gimelstob Realty had anything to do with Braun & May's status as a stockholder of Buyers Choice.
Additionally, the injury to McAloon was not separate and distinct from that suffered by the other shareholderBraun & May. "It is the body of the complaint which determines whether the injury is direct as to the stockholder and the cause of action individual to him or is indirect as to the stockholder and the cause of action derivative from the corporation." Alario v. Miller, 354 So.2d 925, 926 (Fla. 2d DCA 1978). Here, McAloon alleged that Braun & May's sale to Gimelstob essentially caused Buyers Choice to go out of business. The fact that he may have lost the value of his investment because Buyers Choice went out of business is, at best, an indirect injury to McAloon. The direct injury of lost opportunities is to Buyers Choice and equally affects both shareholders. Cf. Salit v. Ruden, McClosky, Smith, Schuster & Russel, P.A., 742 So.2d 381, 389 (Fla. 4th DCA 1999)(holding that claim was not derivative because it did not derive from duty or obligation owed to corporation).
As to Appellees' cross-appeal, we also reverse. The trial court dismissed counts I and II, brought on behalf of Buyers Choice, because it had been administratively dissolved for failing to file annual reports as required by section 607.1622(8), Florida Statutes (1999). In doing so, the trial court relied on this court's decision in Vacation Break of Boca Raton, Inc. v. Breeden, 765 So.2d 281 (Fla. 4th DCA 2000). This court, however, has recently receded from that opinion. See Nat'l Judgment Recovery Agency, Inc. v. Harris, 826 So.2d 1034 (Fla. 4th DCA 2002).
In Vacation Break, this court held that a corporation, which had been administratively dissolved for failure to comply with section 607.1622(8), could not defend a lawsuit until it complied with the requirements *204 of that statute by filing an annual report and paying the fees and taxes that were due. However, in National Judgment, this court, en banc, receded from Vacation Break. See id. at 1034. Following the Fifth District's holding in Cygnet Homes, Inc. v. Kaleny Ltd. of Fla., 681 So.2d 826 (Fla. 5th DCA 1996), we held that there is no distinction between administrative and voluntary dissolution; that in either case, the corporation continues its existence for purposes of winding up and liquidating its business and affairs and that dissolution does not prevent suits by or against the corporation in its corporate name. Nat'l Judgment, 826 So.2d at 1035. Thus, Buyers Choice is not precluded from bringing suit against Braun. Therefore, we reverse and remand for a new trial as to counts I and II of McAloon's second amended complaint.
We have not addressed any error in the trial court's premature resolution of disputed facts at the end of the plaintiffs' case, as any such error was not preserved.
As to all other issues, we find no reversible error or abuse of discretion.
HAZOURI and MAY, JJ., concur.
NOTES
[1] The stock purchase agreement identifies Buyers Choice as "Seller" and McAloon as "Buyer."