DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

FRANK J. STRAZZULLA, individually, CHERI D. STRAZZULLA, individually, and FRANK J. STRAZZULLA, as Custodian for AUSTIN J. and FRANCESCA STRAZZULLA,
Appellants,

v.

RIVERSIDE BANKING COMPANY, a Florida corporation, and JAMES RUSSAKIS, individually,
Appellees.

No. 4D14-768

[September 2, 2015]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Cynthia L. Cox, Judge; L.T. Case No. 312012CA000335.

Casey Walker of Murphy & Walker, P.L., Vero Beach, for appellants.

Curtis Alva of Law Office of Curtis Alva, Jupiter, for appellees.

HAIMES, DAVID A., Associate Judge.

Appellants Frank Strazzulla, et al. ("Shareholders"), appeal the trial court's order dismissing their amended complaint with prejudice and granting final summary judgment. The Shareholders' amended complaint alleged claims of negligent and fraudulent misrepresentation by directors of the Corporation. The sole issue on appeal is whether the Shareholders can bring a direct action in their individual capacity for these claims or whether they are required to bring a derivative action in the name of the corporation. The trial court found that Shareholders lacked standing because they should have filed the complaint as a derivative action. Because the amended complaint alleges both a direct harm and a special injury, Appellants have standing to bring a direct action. Therefore, we reverse the trial court's order.

I.     BACKGROUND

In October 2012, Shareholders filed an amended complaint against

Riverside Banking Company ("Corporation") and against two of its directors, Martha Sneed and James Russakis ("Directors"). Shareholders collectively owned approximately 11,000 shares of stock in the Corporation. The Corporation's assets were contained almost entirely in a subsidiary, Riverside National Bank ("Bank").

According to the amended complaint, in the mid-2000s, the Bank began purchasing large amounts of high risk asset-backed securities, including Collateralized Debt Obligations (CDO's). In 2007, the collapse of Bear Stearns hedge funds grabbed national headlines due to losses related to these types of high risk investments. In March 2008, the Corporation held a shareholders' meeting. After the meeting adjourned, Shareholders approached the two Directors and asked them what types of assets the Bank was holding and whether the Bank owned asset-backed securities similar to those that caused the downfall of Bear Stearns. The Directors, both members of the Bank's Investment Committee, assured Shareholders that the Bank's holdings consisted almost entirely of safe investments such as municipal bonds, treasuries, and corporate bonds and further denied the Bank's ownership of any high risk asset-backed securities. The only persons within earshot of this conversation were Appellant Shareholders and another shareholder, who is not a party to this action.

At the time the Directors made these assurances to Shareholders, the Corporation had a buyback program where Shareholders could redeem their shares. The buyback program had a prevailing rate of $550 per share, meaning Shareholders' 11,000 shares could have been sold for approximately $6 million dollars. The amended complaint alleges that because of these assurances by the Directors, Shareholders chose not to redeem their shares in the Corporation's buyback program. The Bank's investments, which did include risky CDO's, subsequently declined and lost substantially all of their value, and the Bank eventually collapsed. As a result of the Bank's failure, Shareholders' stock in the Corporation became essentially worthless. Shareholders filed the present action alleging claims of negligent misrepresentation and fraudulent misrepresentation against the Directors and a claim of vicarious liability against the Corporation for the Directors' actions.

The Corporation moved to dismiss Shareholders' amended complaint and for summary judgment, asserting that the amended complaint was improperly filed as a direct action instead of a derivative action. The trial court agreed. In reaching its decision, the trial court stated it "cannot agree that the allegations [in the amended complaint] state a claim of direct injury founded on fraud," and it found that Shareholders' injury "emanates

2

from the gross mismanagement of the Bank's investments, not fraud," making their injury common to all other shareholders. The trial court further found that "every shareholder of the Bank suffered the same alleged injury from the same wrong; the plaintiffs' loss is not distinct and cannot be separated from the injury suffered by the Bank and all other stockholders." The trial court then concluded that Shareholders lacked standing because their suit should have been filed as a derivative action. This appeal follows.

## II.   DISCUSSION

The present case raises the murky question under Florida law as to when individual shareholders can bring a lawsuit in their individual capacity, as a direct action, as opposed to a derivative action on behalf of the corporation. "A direct or individual action is a suit by a stockholder to enforce a right of action existing in the stockholder." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 388 (Fla. 4th DCA 1999) (citing *Fort Pierce Corp. v. Ivey,* 671 So. 2d 206, 207 (Fla. 4th DCA 1996)). "A derivative suit is an action in which a stockholder seeks to enforce a corporate right or to prevent or remedy a wrong to the corporation, where the corporation, because it is controlled by the wrongdoers or for other reasons, fails and refuses to take appropriate action for its own protection." *Id.* (citing *Fort Pierce Corp.,* 671 So. 2d at 207). However, resolving the question whether an action should be brought as a direct or derivative action is not so clear.

### A. *Dinuro Investments, LLC v. Camacho*

Recently, in *Dinuro Investments, LLC v. Camacho,* 141 So. 3d 731 (Fla. 3d DCA 2014), the court conducted a detailed survey of the law in this area in both Florida and throughout the country. The court noted that three tests routinely have been applied to resolve the direct versus derivative claim question.

### 1. Direct Harm Test

The first test is the direct harm test. Under this test, the court examines "whether the harm from the alleged wrongdoing flows first to the company and only damages the shareholders or members due to the loss in value of their respective ownership interest in the company, or whether the harm flows 'directly' to the shareholder or member in a way that is not secondary to the company's loss." *Id.* at 735 (citations omitted). Under the direct harm approach, the examining court "looks at the injury alleged by the individual shareholder and determines whether that injury flows from

3

some damage to the company itself." *Id.* at 736. The examining court then must "compare the individual's harm to the company's harm, [and] a shareholder can only bring a direct suit if the damages are unrelated to the damages sustained by the company and if the company would have no right to recover in its own action. *Id.* (citations omitted). The *Dinuro* court noted that "[t]his approach likely provides the greatest simplicity in application, as the courts need only look to whether the alleged wrongful conduct devalued the company as a whole or was directed specifically towards the individual plaintiff." *Id.*

### 2. Special Injury Test

The second test is the special injury test. Under this test, the examining court must "compare the individual plaintiff's alleged injury to those injuries suffered by the other members or shareholders of the company and then determine whether the plaintiff's injury is separate and distinct from other members or shareholders." *Id.* (citations omitted). This approach "require[s] a plaintiff to demonstrate that he has sustained a loss that is substantially different from those losses sustained by other shareholders or members before he can maintain an individual or direct suit." *Id.* at 737. The *Dinuro* court noted that "this test can be much more difficult to apply, as the 'special' nature of the injury can be a nebulous inquiry that is often not readily apparent." *Id.*

### 3. Duty Owed Test

The third test is the duty owed test. Under this test, the examining court "simply examines the statutory and contractual terms to determine whether the duty at issue was owed to the individual member or shareholder by a particular manager or member, or whether those duties were owed to the company generally." *Id.* (citations omitted). The *Dinuro* court noted that "[m]any courts have also applied this test as an exception to the general rule requiring either direct harm or special injury." *Id.* (citation omitted).

### 4. Florida's Test (Two-Prong Test Plus Exception)

After discussing the various tests, the *Dinuro* court then surveyed Florida law. The court first noted that the Florida Supreme Court has not established a rule in this area. The court then cited to *Citizens National Bank of St. Petersburg v. Peters*, 175 So. 2d 54 (Fla. 2d DCA 1965), as the first Florida appellate court to enunciate a rule governing the direct versus derivative suit issue as follows:

A Florida court has defined a derivative suit as an action in which a stockholder seeks to enforce a right of action **existing in the corporation.** Conversely, a direct action, or as some prefer, an individual action, is a suit by a stockholder to enforce a right of action **existing in him.**

What these definitions attempt to convey is that a stockholder may bring a suit in his own right to redress **an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders.** If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation.

*Dinuro,* 141 So. 3d at 738 (quoting *Peters,* 175 So. 2d at 56 (third emphasis added) (internal citations omitted)). Under *Peters,* a shareholder can bring a direct action only if the complaint alleges **both** a direct harm **and** a special injury. The *Dinuro* court further noted that this two-prong "language has essentially become canon in Florida corporate law, as nearly all subsequent cases deciding whether an action is direct or derivative have quoted *Peters* or one of its progeny." *Id.* (citations omitted).

The *Dinuro* court noted that, "Florida courts also recognize an exception to the *Peters* test when an individual member or manager owes a specific duty to another member or manager apart from the duty owed to the company." *Id.* (citations omitted). After further surveying Florida law, the court adopted a two-prong test with an exception for a special duty as follows:

In our view, the only way to reconcile nearly fifty years of apparently divergent case law on this point is by holding that an action may be brought directly only if (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company **and** (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members. . . .

We also find that there is an exception to this rule under Florida law. A shareholder or member need not satisfy this two-prong test when there is a separate duty owed by the defendant(s) to the individual plaintiff under contractual or statutory mandates. Thus, if the plaintiff has not satisfied the

5

two-prong test (direct harm and special injury) or demonstrated a contractual or statutory exception, the action must be maintained derivatively on behalf of the corporation or company.

*Dinuro*, 141 So. 3d at 739-40 (emphasis in original) (citations omitted).

## B. Fourth DCA Cases

After reviewing prior cases in our district, we agree with the Third District and adopt a two-prong test as follows: In order for shareholders to bring a direct action in their individual capacity, the shareholders must allege both a direct harm and a special injury. The two-prong test is consistent with our prior decisions requiring both a direct harm and a special injury. *See Fort Pierce Corp.*, 671 So. 2d at 207 (holding "stockholders may bring a suit in their own right to redress an injury sustained directly by them individually and which is separate and distinct from that sustained by other stockholders."); *see also Chemplex Fla. v. Norelli*, 790 So. 2d 547 (Fla. 4th DCA 2001). A shareholder may bring an individual action as an exception to the two-prong test where there is a separate statutory or contractual duty owed by the wrongdoer to the individual shareholder. *See Braun v. Buyers Choice Mortg. Corp.*, 851 So. 2d 199, 203 (Fla. 4th DCA 2003) ("Generally, a shareholder cannot sue in the shareholder's name for injuries to a corporation unless there is a special duty between the wrongdoer and the shareholder, and the shareholder has suffered an injury separate and distinct from that suffered by other shareholders."). This approach provides a consistent framework and also "comports with general standards of corporate and LLC law by protecting individuals from the obligations arising out of their relationship to the company, while also allowing the parties greater freedom to contractually set their respective obligations." *Dinuro*, 141 So. 3d at 740.

## C. Present Case

Turning to the present case, the parties are operating under two completely different theories as to the nature of the harm alleged in the complaint. Shareholders contend the harm is their decision not to sell back their shares to the Corporation because of the Directors' misrepresentations. The Corporation contends the harm is the investment's lost value because of the Bank's collapse due to poor management. To resolve the question of whether Shareholders have standing to file the present case as a direct action, we must look to the actual allegations contained in Shareholders' amended complaint to determine whether it properly alleges both a direct harm and a special

6

injury.  *Karten v. Woltin*, 23 So. 3d 839, 841 (Fla. 4th DCA 2009).

With respect to the underlying injuries, the amended complaint alleges that if the Shareholders had "been told the truth, [the Shareholders] would have redeemed [their] shares at the then prevailing rate of $550 per share." The amended complaint further alleges that "[b]ecause these investments were not disclosed, however, [Shareholders] did not redeem these shares before the buyback program ended in May 2008," and the shares are essentially worthless.  Although the amended complaint alleges mismanagement of the Bank, these allegations regarding the mismanagement and subsequent decline in stock value only provide context to the separate misrepresentation claims.

With respect to the first prong, direct harm, a shareholder can bring a direct suit only if the damages are unrelated to the damages sustained by the company, and if the company would have no right to recover in its own action.  *Dinuro*, 141 So. 3d at 736.  Here, the alleged harm from the misrepresentation claims are direct to Shareholders and could not belong to the Corporation.  Moreover, it is clear under Shareholders' theory that the Corporation would have no right to recover in its own action against the Directors.  Therefore, the first prong is met.

With respect to the second prong, we must determine whether Shareholders' injuries are separate and distinct from the other shareholders.  Here, the alleged injuries are based upon Shareholders being fraudulently induced to not sell their stock.  This injury was distinct from any injury suffered by other shareholders, who did not receive these same representations.  Therefore, the second prong also has been met.

III.   Conclusion

We hold that in order for shareholders to bring a direct action in their individual capacity, the complaint must satisfy a two prong test and allege both a direct harm and a special injury, or must meet the exception of alleging a special duty to the individual shareholders.  In the present case, Shareholders' amended complaint properly alleged both a direct harm and a special injury.[1]  Therefore, we reverse the trial court's order dismissing their amended complaint with prejudice and granting final summary judgment.  We further remand this matter to the trial court for additional proceedings consistent with this opinion.

---

[1] Because we reverse on the issue of a direct action, we do not reach Shareholders' alternative argument that the amended complaint adequately alleged a breach of a special duty to Shareholders.

*Reversed and remanded.*

DAMOORGIAN and GERBER, JJ., concur.

*       *       *

**Not final until disposition of timely filed motion for rehearing.**