DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DANIEL S. NEWMAN,** as Receiver for **FOUNDING PARTNERS STABLE VALUE FUND, LP, FOUNDING PARTNERS STABLE VALUE FUND, II., LP, FOUNDING PARTNERS GLOBAL FUND, LTD** and **FOUNDING PARTNERS HYBRID-VALUE FUND, L.P.,**
Appellant,

v.

**ERNST & YOUNG, LLP,** a Delaware Limited Liability Partnership, and **MAYER BROWN, LLP,** an Illinois Limited Liability Partnership,
Appellees.

No. 4D16-2162

[July 5, 2017]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John Joseph Murphy, Judge; L.T. Case No. 10-49061 (19).

Stuart Z. Grossman and Rachel W. Furst of Grossman Roth Yaffa Cohen, P.A., Coral Gables, and Leo R. Beus, Scot C. Stirling and Robert O. Stirling of Beus Gilbert PLLC, Phoenix, AZ, for appellant.

Edward A. Marod, Aaron J. Horowitz and Joshua A. Levine of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellee Ernst & Young, LLP.

PER CURIAM.

Appellant Daniel Newman, the court appointed receiver for several investment funds collectively known as Founding Partners, appeals a nonfinal order granting Ernst & Young, LLP's ("E&Y") revised motion to compel arbitration. Newman's third amended complaint alleged claims of professional malpractice, negligent misrepresentation, fraud, breach of fiduciary duty, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and aiding and abetting breaches of statutory duty by E&Y. Newman raises several issues on appeal. We address two of them. First, the trial court did not err in finding that a delegation clause contained in the engagement agreement controls. Second, the trial court properly determined that the claims of the individual investors are subject to

arbitration.   Therefore, we affirm the order compelling arbitration.

I.      Background

In 2009, the Securities and Exchange Commission brought a securities fraud complaint against Founding Partners Capital Management, the general partner and investment manager of Founding Partners, and their president.  Newman ("the receiver") was appointed successor receiver for the funds.  In 2015, the receiver filed a complaint against E&Y "solely in his capacity as court-appointed Receiver" for the funds.  The third amended complaint states that the receiver is "also the assignee of claims assigned by" the individual investors of the funds.

The receiver's claims against E&Y arose out of E&Y's role as auditor of financial statements of the funds for the fiscal years of 2000-07. The receiver alleged that Founding Partners loaned hundreds of millions of dollars to two factoring companies who were supposed to use the loan proceeds to purchase short-term, high-quality receivables payable by the government or by insurance companies.  The third amended complaint alleges that, unbeknownst to the investors, the factoring companies began to misuse the loan proceeds by, among other things, purchasing receivables that were longer-term, less liquid, and much riskier in nature than what was represented to the investors in the financial statements. The receiver's basic theory was that E&Y knew that the factoring companies began to misuse Founding Partners' loan proceeds but nevertheless issued "clean" audits.

E&Y moved to compel arbitration based on the engagement agreements entered into with Founding Partners, which contained an arbitration clause.  E&Y argued that the arbitration agreements contain delegation clauses which command that the arbitrators, not the court, determine the arbitrability of all claims.  E&Y asserted that the receiver was bound by the engagement agreements because he stands in the shoes of the funds. Further, E&Y argued that the assigned claims of the individual investors are derivative of the claims of the funds and are thus subject to arbitration.

II.     Discussion

We find that the delegation clause contained in the arbitration provision of the engagement agreement controls.  Generally speaking, when a delegation provision is included in an arbitration agreement, the court "only retain[s] jurisdiction to review a challenge to that particular provision.  Absent a direct challenge, we must treat the delegation provision as valid and allow the arbitrator to determine the issue of

2

arbitrability." *Angels Senior Living at Connerton Ct., LLC v. Gundry*, 210 So. 3d 257, 258 (Fla. 2d DCA 2017) (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015)). The receiver did not challenge the delegation clause itself. Thus, whether an arbitrable issue exists is a determination that should be delegated to an arbitrator.

We also find that the trial court did not err in ordering arbitration of the assigned claims of the individual investors. This Court some years ago explained the distinction between derivative and direct claims: "A direct or individual action is a suit by a stockholder to enforce a right of action existing in the stockholder." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999) (citing *Fort Pierce Corp. v. Ivey,* 671 So. 2d 206, 207 (Fla. 4th DCA 1996)).

> A derivative suit is an action in which a stockholder seeks to enforce a corporate right or to prevent or remedy a wrong to the corporation, where the corporation, because it is controlled by the wrongdoers or for other reasons, fails and refuses to take appropriate action for its own protection.

*Id.*; *see also Strazzulla v. Riverside Banking Co.,* 175 So. 3d 879, 882-83 (Fla. 4th DCA 2015). Here, the assigned claims of the investors are derivative. The damages suffered by the individual investors resulted from the losses the Founding Partners suffered due to the bad loans.

The receiver's reliance on *KPMG, LLP v. Cocchi,* 88 So. 3d 327 (Fla. 4th DCA 2012), is misplaced. In *KPMG*, this Court held that under Delaware law, the negligent misrepresentation and FDUTPA claims were direct claims by the investors against the firm that audited the partnerships. *Id.* at 330. But the claims of professional malpractice and aiding or abetting breach of fiduciary duty were derivative claims. *Id.* at 331. This Court explained that each claim must be examined to determine whether the claim of an individual investor is direct or derivative:

> In *Tooley v. Davidson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1033 (Del. 2004), the Delaware Supreme Court established a test when analyzing whether an action by stockholders (or limited partners) was direct or derivative of the corporation/general partnership's cause of action. The questions which must be asked are: 1) who suffered the harm, the corporation or the stockholders individually, and 2) who received the benefit of the recovery or remedy? Because the claims of negligent misrepresentation and violation of FDUTPA allege individual harm to the plaintiffs and involve

3

> torts directed at the individual limited partners, we conclude
> that the limited partners suffered individual harm.

*Id.* at 329-30 (quoting *KPMG LLP v. Cocchi,* 51 So. 3d 1165, 1167-68 (Fla. 4th DCA 2010), *vacated,* 565 U.S. 18 (2011)).

Such an analysis is not required in this case because, unlike in *KPMG,* the instant complaint is not brought by any individual plaintiff with an independent tort claim against E&Y. The third amended complaint was filed by Newman as receiver for the funds. As stated in the third amended complaint, all damages that the receiver recovers will go to the funds, which will benefit all of the investors evenly.[1] Throughout the third amended complaint, the receiver alleged that the investors relied on E&Y's representations and refrained from taking actions to protect the Founding Partners' assets, not their own. Accordingly, the claims of the individual investors are derivative.

Consequently, we affirm the trial court's order compelling arbitration of all claims raised in the third amended complaint.

WARNER, CIKLIN and TAYLOR, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***

---

[1] The third amended complaint states, "[e]ach assignor provided an unconditional assignment of its claims against E&Y . . . to the Receiver, and any proceeds from the prosecution of those claims are for the benefit of the receivership."