DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DANIEL S. NEWMAN,** as Receiver for **FOUNDING PARTNERS STABLE VALUE FUND, LP, FOUNDING PARTNERS STABLE VALUE FUND, II., LP, FOUNDING PARTNERS GLOBAL FUND, LTD** and **FOUNDING PARTNERS HYBRID-VALUE FUND, L.P.,**
Appellant,

v.

**ERNST & YOUNG, LLP,** a Delaware Limited Liability Partnership, and **MAYER BROWN, LLP,** an Illinois Limited Liability Partnership,
Appellees.

No. 4D16-2162

[October 11, 2017]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John Joseph Murphy, III, Judge; L.T. Case No. 10-49061 (19).

Stuart Z. Grossman and Rachel W. Furst of Grossman Roth Yaffa Cohen, P.A., Coral Gables, and Leo R. Beus, Scot C. Stirling and Robert O. Stirling of Beus Gilbert PLLC, Phoenix, AZ, for appellants.

Edward A. Marod, Aaron J. Horowitz and Joshua A. Levine of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellee Ernst & Young, LLP.

***ON MOTION FOR REHEARING***

PER CURIAM.

We grant appellant's motion for clarification and rehearing, vacate our prior opinion, and substitute the following in its place.

Appellant Daniel Newman, the court-appointed receiver for several investment funds collectively known as Founding Partners, appeals a non-final order granting Ernst & Young, LLP's, ("E&Y") revised motion to compel arbitration. Newman raises several issues on appeal. We address three of them. First, we agree with the trial court that a delegation clause contained in the engagement agreement with E&Y controls the determination of whether arbitration covers the issues raised in the

1

complaint. Second, the trial court determined that the claims of the individual investors are subject to arbitration. Because several of the claims are direct, rather than derivative, we disagree in part. Third, we agree with the trial court that the claims of Global Fund, Inc., a Founding Partner, are derivative and thus subject to arbitration, even though Global did not sign an arbitration agreement. Therefore, we affirm in part and reverse in part the order compelling arbitration.

I.    Background

In 2009, the Securities and Exchange Commission brought a securities fraud complaint against Founding Partners Capital Management, the general partner and investment manager of Founding Partners, and their president. Newman ("the Receiver") was appointed successor receiver for the funds. In 2015, the Receiver filed a complaint against E&Y in his capacity as court-appointed Receiver for the funds as well as the assignee of claims assigned by the individual investors in the funds. The complaint alleged claims of professional malpractice, negligent misrepresentation, fraud, breach of fiduciary duty, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and aiding and abetting breaches of statutory duty by E&Y.

These claims arose out of E&Y's role as auditor of financial statements of the Founding Partners for the fiscal years of 2000-07. The Receiver alleged that Founding Partners loaned hundreds of millions of dollars to two factoring companies who were supposed to use the loan proceeds to purchase short-term, high-quality receivables payable by the government or by insurance companies. The third amended complaint alleges that, unbeknownst to the investors, the factoring companies began to misuse the loan proceeds by, among other things, purchasing receivables that were longer-term, less liquid, and much riskier in nature than what was represented to the investors in the financial statements. The Receiver's basic theory was that E&Y knew, or should have known, that the factoring companies began to misuse Founding Partners' loan proceeds, but nevertheless issued "clean" audits.

E&Y moved to compel arbitration based on the engagement agreement entered into with Founding Partners, which contained an arbitration clause. E&Y argued that the arbitration agreements contain delegation clauses which command that the arbitrators, not the court, determine the arbitrability of all claims. E&Y asserted that the Receiver was bound by the engagement agreements because he stands in the shoes of the funds. Further, E&Y argued that the assigned claims of the individual investors are derivative of the claims of the funds and are thus subject to arbitration. The trial court agreed and ordered arbitration as to all claims. Newman appeals that order.

II.    Analysis

We find that the delegation clause contained in the arbitration provision of the engagement agreement controls the determination of what issues are subject to arbitration.  Generally speaking, when a delegation provision is included in an arbitration agreement, the court "only retain[s] jurisdiction to review a challenge to that particular provision.  Absent a direct challenge, we must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability." *Angels Senior Living at Connerton Ct., LLC v. Gundry*, 210 So. 3d 257, 258 (Fla. 2d DCA 2017) (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015)). The Receiver did not challenge the delegation clause itself.  Thus, whether an arbitrable issue exists is a determination that should be delegated to an arbitrator.

As to the claims of the individual investors, we conclude that the court erred in ordering arbitration of some of the assigned claims of the individual investors which were direct, not derivative, claims of the investors.  This Court, some years ago, explained the distinction between derivative and direct claims: "A direct or individual action is a suit by a stockholder to enforce a right of action existing in the stockholder." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999) (citing *Fort Pierce Corp. v. Ivey*, 671 So. 2d 206, 207 (Fla. 4th DCA 1996)).

> A derivative suit is an action in which a stockholder seeks to enforce a corporate right or to prevent or remedy a wrong to the corporation, where the corporation, because it is controlled by the wrongdoers or for other reasons, fails and refuses to take appropriate action for its own protection.

*Id.*; *see also Strazzulla v. Riverside Banking Co.*, 175 So. 3d 879, 882-83 (Fla. 4th DCA 2015).  In *KPMG, LLP v. Cocchi*, 88 So. 3d 327 (Fla. 4th DCA 2012), a case factually similar to the present case, we held that negligent misrepresentation and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claims were direct claims by the investors against the firm that audited the partnerships.  *Id.* at 330.  But the claims of professional malpractice and aiding or abetting breach of fiduciary duty were derivative claims. *Id.* at 331.  This Court explained that each claim must be examined to determine whether the claim of an individual investor is direct or derivative:

> In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), the Delaware Supreme Court established a

test when analyzing whether an action by stockholders (or limited partners) was direct or derivative of the corporation/general partnership's cause of action. The questions which must be asked are: 1) who suffered the harm, the corporation or the stockholders individually, and 2) who received the benefit of the recovery or remedy? Because the claims of negligent misrepresentation and violation of FDUTPA allege individual harm to the plaintiffs and involve torts directed at the individual limited partners, we conclude that the limited partners suffered individual harm.

*Id.* at 329-30 (quoting *KPMG LLP v. Cocchi*, 51 So. 3d 1165, 1167-68 (Fla. 4th DCA 2010), *vacated*, 565 U.S. 18 (2011)). Similarly, in this case, the individual investors alleged direct harm in their investment decisions because of E&Y's negligent misrepresentations. In a factually similar case, the court in *Askenazy v. Tremont Group Holdings, Inc.*, 29 Mass.L.Rptr. 340, 2012 WL 440675, at *10 (Mass. Sup. Ct. Jan. 26, 2012), also held that such claims were direct and not derivative, stating:

> specifically, the plaintiffs allege that, as a result of KPMG's misstatements and professional incompetence, they were induced to invest in the Rye Funds, to stay invested, and in some cases to make additional investments in the Funds. *As such, these claims describe individualized harm independent of harm to the partnership, and rest on a duty to each plaintiff that is not merely derivative of KPMG's fiduciary duties as the Rye Funds' auditor.*

*Id.* (emphasis added). In this case, the complaint makes similar allegations that the investors were injured through investing or making additional investments in the funds because of the misrepresentations of E&Y. In addition, in the count for aiding and abetting the breach of statutory duty, the Receiver alleges the breach of statutory duties which are owed to the individual investors. Therefore, those claims of negligent misrepresentation, fraud, and aiding violation of statutory duties are not derivative, and, thus, are not subject to arbitration, where none of the individual investors agreed to arbitrate their claims. On the other hand, we conclude that the breach of fiduciary claims and professional malpractice claims are derivative. The count alleging professional malpractice against E&Y alleges only that the Founding Partners, and not the investors, were damaged. As to the breach of fiduciary claim, the damages from the improper audits were a failure to reveal that the collateral to secure the Founding Partners' loans was grossly inadequate. These were damages to the Founding Partners when the loans defaulted, not direct damages of the investors. Therefore, in this case, the breach of fiduciary claims of the investors are derivative and can be arbitrated.

4

The receiver also contends that Global Fund, one of the Founding Partners, should not be required to arbitrate its claims, because it did not join in the arbitration agreement. Although it is clear that Global was not named in the arbitration agreement, the complaint alleges that it is a Founding Partner, and its damages are therefore the same damages as the Founding Partners. No separate claim of direct damages for Global is alleged. Therefore, we conclude that all of its claims are derivative of those of the other Founding Partners, and the court did not err in granting arbitration of Global's claims.

Consequently, we affirm the trial court's order compelling arbitration of the claims of the Founding Partners, including Global, and the claims of the investors for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. We reverse the order compelling arbitration of the negligent misrepresentation, fraud, and aiding and abetting the breach of statutory duty counts.

WARNER, CIKLIN and TAYLOR, JJ., concur.