NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

HOME TITLE COMPANY OF MARYLAND, )
INC., a Maryland corporation,                )
                                             )
            Appellant/Cross-Appellee,        )
                                             )
v.                                           )      Case No. 2D17-998
                                             )
MICHAEL J. LASALLA,                          )
                                             )
            Appellee/Cross-Appellant.        )
_____)

Opinion filed November 16, 2018.

Appeal from the Circuit Court for Pinellas
County; Pamela A.M. Campbell, Judge, and
Kathleen T. Hessinger, Acting Circuit Court
Judge.

W. Todd Boyd and Yvette R. Lavelle of
Boyd Richards Parker & Colonnelli, P.L.,
Miami, for Appellant/Cross-Appellee.

Courtney L. Fernald and Leonard S.
Englander of Englander Fischer, St.
Petersburg, for Appellee/Cross-Appellant.

MORRIS, Judge.

        Home Title Company of Maryland, Inc. (Home Title), appeals a final

judgment entered in favor of Michael J. LaSalla in the amount of $60,382 after a bench

trial on LaSalla's complaint against Home Title for breach of fiduciary duty.  LaSalla

cross appeals. Both parties raise numerous issues on appeal. We find merit in Home Title's challenge to LaSalla's standing as an individual to bring an action based solely on an injury to an LLC of which he is a member. We reverse the judgment on this basis, and because this issue is dispositive of the case, we decline to reach the other issues raised.

I.  Background

In 2003, George Mullin asked his friend LaSalla for a loan to purchase four undeveloped tracts of land in Maryland. LaSalla agreed to loan Mullin the money with the condition that they form an LLC for the purpose of purchasing the property. They formed Florida-Maryland Properties, LLC (the LLC), in Florida, with Mullin and LaSalla being the only members. LaSalla loaned $290,000 to the LLC to purchase the land, and the loan was secured by a mortgage.

In 2006, LaSalla and Mullin agreed to sell lot 4 for $315,000 to satisfy LaSalla's loan to the LLC. They also discussed conveying lot 2 to a new LLC created by LaSalla, of which LaSalla was the sole member. The closing occurred in October 2006, and the parties retained Home Title, a Maryland-based company, to serve as escrow agent for the sale of lot 4. Lot 4 was conveyed to the new owners, and LaSalla's loan to the LLC was satisfied. However, Mullin and LaSalla could not agree to other terms, and lot 2 was never conveyed to LaSalla's newly-formed LLC. LaSalla corresponded with Home Title over the course of the next three years, but nothing was resolved as to lot 2.

In 2012, Mullin approached Home Title and asked it to convey lots 1, 2, and 3 to him and his wife. He misrepresented that he and his wife were the only

members of the LLC and that they wished to dissolve the LLC. Home Title conveyed lots 1, 2, and 3 to the Mullins.

In 2013, LaSalla filed suit in Florida against Home Title, the Mullins, and the LLC. He also filed suit against the Mullins in Maryland to quiet title to lot 2. In 2015, LaSalla and the Mullins entered into a mediated settlement agreement whereby LaSalla's claims against the Mullins were satisfied in exchange for $100,000. In 2016, LaSalla filed the operative complaint in Florida, alleging a count for breach of fiduciary duty against Home Title based on Home Title's failure to transfer lot 2 to LaSalla or his new LLC in 2006 and Home Title's transfer of lots 1, 2, and 3 to the Mullins in 2012. LaSalla sought special damages from Home Title under the wrongful act doctrine for fees and costs LaSalla incurred in the litigation against the Mullins.

Home Title filed a motion to dismiss LaSalla's complaint for lack of personal jurisdiction, which the trial court denied. Home Title also moved for summary judgment, arguing that any claim based on the 2006 events was barred by the statute of limitations. The trial court agreed, concluding that the 2006 dispute "as to Home Title's alleged failure to transfer [l]ot 2" was "barred by the four[-]year statute of limitations" because the action was not filed until December 6, 2013. Thus, the trial focused only on the 2012 transfer of lots 1, 2, and 3 to the Mullins. After LaSalla presented his case, Home Title moved for an involuntary dismissal arguing that LaSalla's claim was purely derivative of the harm to the LLC and that, therefore, only the LLC could sue for damages. The trial court denied Home Title's motion. Home Title raised the issue again during closing argument, asserting that the claim based on the 2012 transaction

was derivative and belonged to the LLC, which owned lots 1, 2, and 3 at the time of the 2012 transaction.

After trial, the trial court entered a final judgment in favor of LaSalla in the amount of $60,382. The trial court found that Home Title owed a fiduciary duty to LaSalla and that Home Title breached the duty by transferring lots 1, 2, and 3 to the Mullins in 2012. The trial court awarded the $60,382 as damages under the wrongful act doctrine, after a reduction for LaSalla's comparative fault. The trial court rejected LaSalla's claim for damages for property asset losses, concluding that there was no evidence to support the amount of loss.

II.    Analysis

On appeal, Home Title argues that LaSalla lacks standing to assert a claim against Home Title, and to recover damages from Home Title, based on a direct injury to the LLC. Home Title contends that LaSalla suffered only an indirect injury as a member of the LLC. As part of its argument, Home Title claims that the trial court erred when it ruled that Home Title owed a duty to LaSalla, individually, in 2012. We agree.

We review de novo the trial court's ruling on Home Title's motion for involuntary dismissal on the basis that LaSalla lacked standing. See Purificato v. Nationstar Mortg., LLC, 182 So. 3d 821, 823 (Fla. 4th DCA 2016). Generally, a shareholder of a corporation or a member of an LLC may not maintain an action in his or her own right if the cause of action is derived from the right of the corporation or the LLC to bring the action. See Alario v. Miller, 354 So. 2d 925, 926 (Fla. 2d DCA 1978); Dinuro Invests., LLC v. Camacho, 141 So. 3d 731, 738-40 (Fla. 3d DCA 2014). In other words, if "the injury is primarily against the corporation, or the [share]holders generally,

- 4 -

then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation." Alario, 354 So. 2d at 926 (quoting Citizens Nat'l Bank v. Peters, 175 So. 2d 54, 56 (Fla. 2d DCA 1965)).

Two different transactions formed the basis of LaSalla's claim, one that occurred (or, more accurately, failed to occur) in 2006 and a second that occurred in 2012. LaSalla first claimed that Home Title breached its duty by failing to convey lot 2 from the LLC to him or his newly-formed LLC in 2006. However, the trial court correctly ruled that that portion of LaSalla's claim was barred by the statute of limitations because the complaint was not filed until December 2013.[1] See § 95.11(3)(o), Fla. Stat. (2006); Goodwin v. Sphatt, 114 So. 3d 1092, 1094 (Fla. 2d DCA 2013) ("[A] claim for breach of fiduciary duty is subject to the four-year statute of limitations for intentional torts." (first citing § 95.11(3)(o); and then citing Halkey-Roberts Corp. v. Mackal, 641 So. 2d 445, 447 (Fla. 2d DCA 1994))). Thus, the only transaction that remained at issue was the 2012 transaction in which lots 1, 2, and 3 were conveyed from the LLC to the Mullins. There was no dispute that the three lots belonged to the LLC. See § 608.425(1), Fla. Stat. (2012) ("All property originally contributed to the limited liability company or subsequently acquired by a limited liability company by purchase or otherwise is limited liability company.").[2] Therefore, the LLC suffered the injury as a result of the 2012

---

[1]The trial court found that LaSalla's claim that was based on Home Title's failure to convey lot 2 accrued at the latest in September 2009, when LaSalla sent Home Title a letter demanding that Home Title convey lot 2 or face litigation.

[2]Section 608.425 was repealed and replaced with section 605.0110 of the Florida Revised Limited Liability Company Act, which became effective in 2014. Ch. 2013-180, §§ 2, 5 & ch. 2015-148, § 11, Laws of Fla. Section 605.0110 provides that "[a]ll property originally contributed to the limited liability company or subsequently acquired by a limited liability company by purchase or other method is limited liability

- 5 -

transfer of the property from the LLC to the Mullins, and any claim based on this event should have been brought by the LLC or as a derivative claim on behalf of the LLC.

At the time LaSalla's initial complaint was filed, section 608.601, titled "Member's derivative actions," allowed a member of an LLC to "commence a proceeding in the right" of the LLC after a demand was filed with the managers or managing members. § 608.601, Fla. Stat. (2013). This section was repealed and replaced by the Florida Revised Limited Liability Company Act. Ch. 2013-180, § 5, & ch. 2015-148, § 11, Laws of Fla.; §§ 605.0101-605.1108, Fla. Stat. (2014). The Act includes two separate statutes addressing derivative actions by members of LLCs and the proper plaintiffs in such actions. §§ 605.0802, 605.0803. Even assuming that LaSalla was permitted under the applicable statutes to file a derivative action on behalf of the LLC against Home Title, LaSalla did not file such an action. He did not state that he was filing a claim on behalf of the LLC, and he asserted an injury on his own behalf, not on behalf of the LLC.

LaSalla claims that he was entitled to bring a suit in his individual capacity because his injury was distinct from Mullin, the only other member of the LLC. He relies on Dinuro Investments, 141 So. 3d at 735, in which the court recognized that it can be difficult to draw a distinction between a derivative claim and an individual claim, especially in the context of "closely held corporations and LLCs, which typically have fewer individuals that possess an ownership interest." In such cases, "claims of mismanagement or self-dealing become a zero-sum game in which one party profits from the company's loss, while the other is harmed due to the company's reduced

property" and that "[a] member of a limited liability company has no interest in any specific limited liability company property." § 605.0110(1), (4), Fla. Stat. (2014).

- 6 -

value." Id. The Dinuro Investments court considered Florida precedent, as well as the various tests used by other jurisdictions, and held the following:

> [A]n action may be brought directly only if (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company and (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members.

Id. at 739-40 (citations omitted) (holding that action was derivative and could not be brought individually by a member of the LLC because the harm to the member was indirect); see also Strazzulla v. Riverside Banking Co., 175 So. 3d 879 (Fla. 4th DCA 2015) (adopting the two-prong test in Dinuro Investments as being consistent with Fourth District precedent). The court went on to recognize an exception to this rule:

> A shareholder or member need not satisfy this two-prong test when there is a separate duty owed by the defendant(s) to the individual plaintiff under contractual or statutory mandates. Thus, if the plaintiff has not satisfied the two-prong test (direct harm and special injury) or demonstrated a contractual or statutory exception, the action must be maintained derivatively on behalf of the corporation or company.

Dinuro Investments, 141 So. 3d at 740 (citation omitted).

Here, LaSalla does not meet the test set forth in Dinuro Investments because the harm to LaSalla flowed from the harm to the LLC. The property belonged to the LLC, and thus, the LLC suffered the direct harm when Home Title transferred the property to the Mullins in 2012. Even though LaSalla is the only other member of the LLC who suffered as a result of the transfer, the harm to him individually was indirect and the result of the harm to the LLC.

LaSalla further contends that even if he did not satisfy the two-prong test, this case falls within the Dinuro Investments exception because Home Title owed a separate contractual duty to LaSalla individually based on the escrow agreement regarding lot 2 in 2006. But as discussed above, the statute of limitations barred LaSalla's claim that Home Title had a duty to him regarding lot 2 in 2006.[3] There was no evidence that Home Title had a statutory or contractual duty to LaSalla individually regarding the transfer of lots 1, 2, and 3 in 2012; Home Title's duty, if any, was to the LLC, of which LaSalla is a member.

In conclusion, the trial court erred in entering judgment in favor of LaSalla because he did not bring a derivative action against Home Title on behalf of the LLC for breach of fiduciary duty based on the 2012 transaction. We reverse and remand with directions for the trial court to enter an involuntary dismissal.

KELLY and ATKINSON, JJ., Concur.

---

[3]Further, we note that LaSalla testified that Home Title was supposed to transfer lot 2 to his newly-formed LLC in 2006. Thus, even if the statute of limitations did not bar the 2006 claim, it appears that LaSalla had only a derivative claim, on behalf of his newly-formed LLC, against Home Title for its failure to convey lot 2 to his newly-formed LLC in 2006. See Lincoln Oldsmobile, Inc. v. Branch, 574 So. 2d 1111, 1114 (Fla. 2d DCA 1990) (holding that where the injury is to the corporation, a stockholder must bring the action in the name of the corporation, "even where the individual is the sole stockholder of the corporation" (citing Schaffer v. Universal Rundle Corp., 397 F.2d 893 (5th Cir. 1968))).