******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBINSON, C. J., with whom McDONALD and MUL-LINS, Js., join, concurring in part and dissenting in part. I respectfully disagree with part I B of the majority opinion, which concludes that the plaintiff, Roger L. Saunders, had standing to bring counts four, six, nine and ten of the second amended complaint, asserting direct claims of breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing against the defendants Clark Briner and Revere Capital, LLC, a Texas limited liability company (LLC).[1] I conclude that the plaintiff lacks standing because the bridge loan to Revere Investments, LLC (Revere Investments), in connection with Revere Investments' loan to LR Global (LR Global bridge loan) that gave rise to these claims was made by Saunders Capital, LLC (Saunders Capital), which is an LLC of which the plaintiff was the sole member and manager, meaning that any injury was suffered by the LLC rather than the plaintiff personally—even though it was the plaintiff who had provided the funds at issue to Saunders Capital.[2] In so concluding, I respectfully disagree with the majority's decision to follow § 7.01 (d) of the American Law Institute's Principles of Corporate Governance: Analysis and Recommendations (Principles of Corporate Governance) and adopt a single member LLC exception to the general rule prohibiting members of such companies from bringing direct actions to recover for harms suffered entirely by the company. See 2 A.L.I., Principles of Corporate Governance: Analysis and Recommendations (1994) § 7.01 (d), p. 17; see also, e.g., *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 138, 161 A.3d 1227 (2017). In my view, the majority's decision to adopt this single member exception to the general rule invades our legislature's primary role in the formulation of public policy—in an arena that is purely statutory. Additionally, the majority's approach may open the door to gamesmanship with the LLC corporate form. Because I conclude that the plaintiff lacked standing to bring counts four, six, nine and ten of the second amended complaint, I respectfully dissent from part I B of the majority opinion.

I agree at the outset with the majority's recitation of the facts and procedural history of this case. I also note that it is well settled that the "issue of standing implicates a court's subject matter jurisdiction and is subject to plenary review. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a [well settled] twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distin-

guished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]." (Citation omitted; internal quotation marks omitted.) *Channing Real Estate, LLC* v. *Gates*, supra, 326 Conn. 137.

By way of background, I "begin . . . with the nature of LLCs and the law that governs them. Our common law does not recognize LLCs, which were first created by statute in Connecticut in 1993. Public Acts 1993, No. 93-267. An LLC is a distinct type of business entity that allows its owners to take advantage of the pass-through tax treatment afforded to partnerships while also providing them with limited liability protections common to corporations. See, e.g., 51 Am. Jur. 2d 818, Limited Liability Companies § 1 ([2d Ed.] 2011); see also General Statutes [Rev. to 2017] § 34-133 (setting forth members' limited liability protections). The [Connecticut Limited Liability Company Act, General Statutes (Rev. to 2017) § 34-100 et seq.] establishes the right to form an LLC and all of the rights and duties of the LLC, as well as all of the rights and duties of members and assignees. It permits the members to supplement these statutory provisions by adopting an operating agreement to govern the LLC's affairs. See, e.g., General Statutes [Rev. to 2017] § 34-140 (c) (permitting members to adopt operating agreement governing LLC's affairs, provided agreement is consistent with act)." *Styslinger* v. *Brewster Park, LLC*, 321 Conn. 312, 317–18, 138 A.3d 257 (2016); accord General Statutes § 34-243 et seq. (provisions of Connecticut Uniform Limited Liability Company Act, effective July 1, 2017).

In *Channing Real Estate, LLC*, we followed the decision of the Appellate Court in *O'Reilly* v. *Valletta*, 139 Conn. App. 208, 214, 55 A.3d 583 (2012), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013), and observed that an LLC "is a distinct legal entity whose existence is separate from its members. . . . [An LLC] has the power to sue or to be sued in its own name; see General Statutes [Rev. to 2017] §§ 34-124 (b) and 34-186; or may be a party to an action brought in its name by a member or manager. See General Statutes [Rev. to 2017] § 34-187.[3] A member or manager, however, may not sue in an individual capacity to recover for an injury based on a wrong to the [LLC]." (Footnote in original; internal quotation marks omitted.) *Channing Real Estate, LLC* v. *Gates*, supra, 326 Conn. 137–38; see also General Statutes (Rev. to 2017) § 34-134 ("[a] member or manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company"). In *Channing Real Estate, LLC*, we concluded that an individual defendant lacked standing to assert a counterclaim alleging a violation

of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., against the plaintiff because the facts established that the defendant had "not demonstrated a specific, personal, and legal interest separate from that of Front Street Commons," an LLC of which he was a member. *Channing Real Estate, LLC* v. *Gates*, supra, 138. We explained that "Front Street Commons owned the property that was at issue during the parties' negotiations. Front Street Commons would have been a party to the proposed option and operating agreements. Front Street Commons allegedly lost financial assistance from the plaintiff and suffered lost rental income. From these facts, it is clear that the injuries the defendant alleges in the CUTPA count of his counterclaim, if any, are those allegedly suffered by Front Street Commons specifically, and not the defendant. Front Street Commons is [an LLC] and is therefore a distinct legal entity from the defendant, who is simply a member of that entity. Because a member of [an LLC] cannot recover for an injury allegedly suffered by the [LLC], we conclude that the defendant lacks standing to pursue a claim alleging a violation of CUTPA." Id.; accord *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 219–20, 982 A.2d 1053 (2009) (concluding that General Statutes [Rev. to 2009] § 34-134 did not bar claims against insurance company by members of LLC to whom insurance policies had been issued because their status as named insureds under policies gives them standing).

Although this issue remains one of first impression for this court, I observe first that, in *Padawer* v. *Yur*, 142 Conn. App. 812, 818, 66 A.3d 931, cert. denied, 310 Conn. 927, 78 A.3d 145 (2013), our Appellate Court, consistent with the analysis in our subsequent decision in *Channing Real Estate, LLC*, held that a sole member of an LLC lacks standing to bring an action for harm suffered only by the LLC.[4] Courts in other jurisdictions, with near uniformity, have held similarly to the Appellate Court in *Padawer*. See, e.g., *Direct List, LLC* v. *Kessler*, Docket No. 15-cv-2025-WQH-JLB, 2018 WL 3327802, *1–2 (S.D. Cal. July 6, 2018); *Home Title Co. of Maryland, Inc.* v. *LaSalla*, 257 So. 3d 640, 644–45 (Fla. App. 2018); *Turner* v. *Andrew*, 413 S.W.3d 272, 276 (Ky. 2013); *Zeigler* v. *Housing Authority*, 118 So. 3d 442, 450 (La. App. 2013); *Krueger* v. *Zeman Construction Co.*, 758 N.W.2d 881, 890 (Minn. App. 2008), aff'd, 781 N.W.2d 858 (Minn. 2010); *Freedom Financial Group, Inc.* v. *Woolley*, 280 Neb. 825, 834, 792 N.W.2d 134 (2010); *Sherman* v. *Boston*, 486 S.W.3d 88, 94–95 (Tex. App. 2016); *Woods View II, LLC* v. *Kitsap*, 188 Wn. App. 1, 23–24, 352 P.3d 807, review denied, 184 Wn. 2d 1015, 360 P.3d 818 (2015); accord *Elizabeth Retail Properties LLC* v. *KeyBank National Assn.*, 83 F. Supp. 3d 972, 987–88 (D. Or. 2015) (applying Oregon law and concluding that single member of LLC had standing because defamation and loss of business reputation

claims caused injuries to her that went beyond those suffered by LLC). But see *Stoker* v. *Bellemeade*, *LLC*, 272 Ga. App. 817, 822, 615 S.E.2d 1 (2005) ("we find no reason to require the [plaintiffs] to derivatively assert the breach of fiduciary duty claims in the context of the closely held LLCs in the present case"), rev'd in part on other grounds, 280 Ga. 635, 631 S.E.2d 693 (2006); *Marx* v. *Morris*, 386 Wis. 2d 122, 148–49, 925 N.W.2d 112 (2019) ("[C]orporate principles of standing do not apply to LLCs. Specifically, in the matter before us, injuries to North Star [an LLC] and to its members are not mutually exclusive because financial injury to North Star flows through to its members just as an injury would if North Star were a partnership rather than an LLC. Therefore, the question is not whether the alleged injury is to the LLC or to its individual members. Rather, the question is simply whether the individual member bringing the action has suffered an injury to a legally protected interest."). A prominent, local scholarly commentator agrees, writing that "a member cannot sue in an individual capacity to recover for any injury based on a wrong to the LLC, even if the LLC has only one member." M. Ford, Connecticut Corporation Law and Practice (2d Ed. 2017 Supp.) § 13.03 (H), p. 13-20; see also 51 Am. Jur. 2d, supra, § 45, p. 894 ("[a] member of an [LLC] may not sue in an individual capacity to recover for an injury the basis of which is a wrong to the LLC").

The majority, however, adopts an exception to this well settled general rule that is premised on § 7.01 (d) of the American Law Institute's Principles of Corporate Governance, which blurs the line between derivative and direct actions in certain cases involving closely held corporations.[5] Section 7.01 (d) allows a trial court to "treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons."[6] Principles of Corporate Governance, supra, § 7.01 (d), p. 17. The commentary explains that § 7.01 (d) is premised on the decision of the United States Court of Appeals for the Ninth Circuit in *Watson* v. *Button*, 235 F.2d 235 (9th Cir. 1956), "which found that the usual policy reasons requiring an action that principally alleges an injury to the corporation to be treated as a derivative action are not always applicable to the closely held corporation." Principles of Corporate Governance, supra, § 7.01, comment (e), p. 21; see *Watson* v. *Button*, supra, 237 (Under Oregon law, "[s]uits against directors for violations of fiduciary duties are equitable in nature," and the plaintiff could seek permission to proceed directly because he and the defendant "were

the only stockholders at the time of the misappropriation. The corporate creditors are adequately protected since [the two parties] are jointly responsible for the corporate liabilities.").

In adopting this principle, the American Law Institute also found persuasive the Massachusetts Supreme Judicial Court's decision in *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 328 N.E.2d 505 (1975), which had observed that "the close corporation bears striking resemblance to a partnership," and that "the close corporation is often little more than an 'incorporated' or 'chartered' partnership"; id., 586; in holding that stockholders in a close corporation owe each other a fiduciary duty akin to that of partners. Id., 592–93; see Principles of Corporate Governance, supra, § 7.01, comment (e), pp. 21–23. The American Law Institute considered that particular context and observed that, "[i]n some circumstances, characterizing the action as direct will also be fairer to the defendants, as when the defendants wish to file a counterclaim against the plaintiff, because the general rule is to prohibit counterclaims in a derivative action. . . . Also, in a direct action, each side must normally bear its own legal expenses, and the plaintiff, if successful, cannot ordinarily look to the corporation for attorney's fees. Such a rule seems more appropriate in cases that fundamentally involve disputes between a limited number of 'partners' in a closely held firm." (Citation omitted.) Principles of Corporate Governance, supra, § 7.01, comment (e), p. 22.

I respectfully disagree with the majority's decision to adopt the *Watson* v. *Button*/American Law Institute approach to close corporation standing to hold that the plaintiff had standing to raise the claims alleged in counts four, six, nine and ten of the second amended complaint.[7] First, I do not believe that approach applies at all with respect to the factual predicate underlying those counts because it "is almost always employed in purely intracorporate disputes." *Mathis* v. *ERA Franchise Systems, Inc.*, 25 So. 3d 298, 302 (Miss. 2009); see id., 301–302 (declining to apply doctrine when plaintiff's action was "filed against his current and former business partners" and "four defendants who are not and have never been owners or members" of business at issue, creating potential for multiplicity of actions and interference with distribution of recovery). As the majority acknowledges in footnote 38 of its opinion, distinguishing our decisions in *May* v. *Coffey*, 291 Conn. 106, 967 A.2d 495 (2009), and *Fink* v. *Golenbock*, 238 Conn. 183, 680 A.2d 1243 (1996), the counts considered in part I B of the majority opinion do not present an intracorporate dispute, insofar as we consider whether the plaintiff sustained an injury separate and distinct from his own LLC, Saunders Capital, rather than one distinct from the other members of Revere Investments and Revere High Yield, GP, LLC (Fund GP).[8] Rather than

presenting an occasion to make significant changes to corporate law in Connecticut, I believe that the present case is nothing more than a simple "wrong plaintiff" case—which might well explain why the plaintiff did not attempt to rely on the *Watson* v. *Button*/American Law Institute approach in his brief and why the defendants' reply brief simply reiterates their reliance on *Padawer* v. *Yur*, supra, 142 Conn. App. 817–18.[9]

Second, I find more persuasive the analysis of those courts that have rejected the *Watson* v. *Button*/American Law Institute approach to close corporation standing. The leading decision on this point is *Bagdon* v. *Bridgestone/Firestone, Inc.*, 916 F.2d 379 (7th Cir. 1990), cert. denied, 500 U.S. 952, 111 S. Ct. 2257, 114 L. Ed. 2d 710 (1991), in which the United States Court of Appeals for the Seventh Circuit rejected, as a matter of Delaware law, the expansion of the "special injury" doctrine articulated in *Watson* v. *Button*, supra, 235 F.2d 237, "into a general exception for closely held corporations, treating them as if they were partnerships." *Bagdon* v. *Bridgestone/Firestone, Inc.*, supra, 383–84. The Seventh Circuit emphasized that the "premise of this extension may be questioned. Corporations are *not* partnerships. Whether to incorporate entails a choice of many formalities. Commercial rules should be predictable; this objective is best served by treating corporations as what they are, allowing the investors and other participants to vary the rules by contract if they think deviations are warranted. So it is understandable that not all states have joined the parade." (Emphasis in original.) Id., 384; see also *Frank* v. *Hadesman & Frank, Inc.*, 83 F.3d 158, 162 (7th Cir. 1996) (declining to adopt American Law Institute's § 7.01 [d] as matter of Illinois law).

Similarly, the Virginia Supreme Court "decline[d] to adopt a closely held corporation exception to the rule requiring that suits for breach of fiduciary duty against officers and directors must be brought derivatively on behalf of the corporation and not as individual shareholder claims. Adherence to the general rule without this proposed exception prevents multiplicity of lawsuits by shareholders. A recovery by the corporation protects all shareholders as well as creditors. Finally, as expressed in *Bagdon* [v. *Bridgestone/Firestone, Inc.*, supra, 916 F.2d 384], consistent application of commercial rules promotes predictability. If shareholders and the corporation desire to vary commercial rules by contract, they are free to do so." *Simmons* v. *Miller*, 261 Va. 561, 576, 544 S.E.2d 666 (2001). Indeed, the Virginia Supreme Court has extended this analysis from *Simmons* to the LLC context. See *Remora Investments, LLC* v. *Orr*, 277 Va. 316, 323–24, 673 S.E.2d 845 (2009) (intracompany dispute between manager and member of LLC).

Beyond undermining the advantages of predictability

and stability, the majority's approach also relieves the plaintiff of the consequences of his business decision to proceed through his LLC, thereby giving him "the best of both business entities: limited liability provided by a corporate structure and direct compensation for corporate losses. That cushy position is not one the law affords. Investors who created the corporate form cannot rend the veil they wove. . . . Recovery by the corporation ensures that all of the corporate participants—stockholders, trade creditors, employees and others will recover according to their contractual and statutory obligations. . . . We have consistently held that a corporation is an entity separate and distinct from its shareholders. " (Citations omitted; internal quotation marks omitted.) *Landstrom* v. *Shaver*, 561 N.W.2d 1, 14 (S.D. 1997); see also *Wessin* v. *Archives Corp.*, 592 N.W.2d 460, 466 (Minn. 1999) (rejecting American Law Institute's approach to abandon the "direct-derivative distinction for closely held corporations" because, although "closely held corporations have been described as partnership[s] in corporate guise . . . a closely held corporation is still a corporation *with all of the rights and limitations proscribed by the legislature*," and "[a] uniform, fair and predictable mechanism for enforcing claims of the corporation is important for the corporation and all of the shareholders" [citations omitted; emphasis added; internal quotation marks omitted]); *Keller* v. *Estate of McRedmond*, 495 S.W.3d 852, 881–82 (Tenn. 2016) (rejecting argument seeking "an exception to the general rule prohibiting a shareholder from asserting a claim belonging to the corporation based on the fact that this is a subchapter S, [closely held] corporation," rendering parties "more like partners in a partnership who are harmed individually when the corporation is harmed," because, "where parties have deliberately chosen to do business in corporate form for other reasons such as tax or accounting purposes, they cannot disregard the corporate form at their convenience" [citations omitted; internal quotation marks omitted]).

Moreover, as the Appellate Court observed in *Padawer* v. *Yur*, supra, 142 Conn. App. 817–18, the majority's approach to standing is directly inconsistent with General Statutes (Rev. to 2017) § 34-134, which provides that "[a] member or manager of a limited liability company is not a proper party to a proceedings by or against a limited liability company solely by reason of being a member or manager of the limited liability company, except where the object of the proceeding is to enforce a member's or manager's right against or liability to the limited liability company or as otherwise provided in an operating agreement." Consistent with the statutory analysis in *Padawer*, the Nebraska Supreme Court has observed that the approach to standing endorsed by the majority would "allow a member of an LLC to use the corporate form as a shield to

protect itself from personal liability for acts taken by an LLC while still allowing an individual to collect damages, such as lost profits, incurred by the LLC." *Freedom Financial Group, Inc.* v. *Woolley*, supra, 280 Neb. 834; see id. (The court rejected the argument of the plaintiff, the sole member of the LLC, that it had standing to bring a professional negligence action against the LLC's attorneys because, "[a]s a member of an LLC, [the plaintiff] is not a proper party to this suit, because [the defendant's] alleged liability is to [the LLC] and any potential damages would also belong to [the LLC]. [The plaintiff] may not attempt to use the corporate form of the LLC to shield itself from liability and then use the same corporate form as a sword to recover damages or enforce liability to the LLC.").

Similarly, in concluding that the sole member of a trucking business structured as an LLC lacked standing to bring an action for lost profits, the Kentucky Supreme Court rejected the argument that, "because [the defendant] was the sole owner of the business he was necessarily the real party in interest, a status that allowed him to properly advance the lost profits claim in his own name rather than in the name of the LLC." *Turner* v. *Andrew*, supra, 413 S.W.3d 276. The court emphasized that the "LLC and its solitary member . . . are not legally interchangeable. Moreover, an LLC is not a legal coat that one slips on to protect the owner from liability but then discards or ignores altogether when it is time to pursue a damage claim. The law pertaining to [LLCs] simply does not work that way."[10] Id.; see *Krueger* v. *Zeman Construction Co.*, supra, 758 N.W.2d 889–90 (The court concluded that an LLC member lacked standing to bring a claim under a business practice discrimination statute because it was the LLC, "and not [the] appellant personally, [that] entered into a contract with [the] respondent. . . . Because a member of [an LLC] is protected from personal liability for the company's acts, debts, liability, and obligations, unless the corporate veil is pierced, [the] appellant gained protection from the decision. . . . Indeed, the avoidance of personal liability is a legitimate reason for forming [an LLC]. . . . But [the] appellant also gave up some rights." [Citations omitted.]); *Woods View II, LLC* v. *Kitsap*, supra, 188 Wn. App. 23–24 (Even though the sole shareholder personally guaranteed loans, she lacked standing to seek a remedy for "consequential damages that would not have happened but for the primary harm to [the plaintiff LLC]. A shareholder does not have standing to recover consequential damages that result from the harm to her corporation. . . . The fact that [she] was the sole shareholder of [the plaintiff] does not change our analysis: a sole shareholder, by necessity, cannot show an injury distinct from that to other shareholders." [Citation omitted; internal quotation marks omitted.]).

Particularly because LLCs are entirely creatures of

statute; see, e.g., *Styslinger* v. *Brewster Park, LLC*, supra, 321 Conn. 317; I believe that action in this area that affects a party's rights and remedies is a uniquely legislative function. Because the legislature is active in this area, given its recent passage of the comprehensive Connecticut Uniform Limited Liability Company Act, and because there are natural constituencies that are well situated to advocate for legislative action in this area, I believe it best to stay our hand rather than make a public policy judgment expanding standing in civil cases involving LLCs. See *Krueger* v. *Zeman Construction Co.*, supra, 758 N.W.2d 890 (deferring to legislature to create remedy for business practice discrimination when party is single member LLC); compare *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 550–51 n.35, 93 A.3d 1142 (2014) (declining to overrule Freedom of Information Act case law because "[t]he circumstances of the enactment of [a statutory provision governing law enforcement disclosure obligations], and the controversy that continues to this day about the relationship between criminal investigations and the public's right to know under the act, demonstrates that this is the kind of issue that is squarely on the radar of the legislature and the various interested entities"), with *State* v. *Salamon*, 287 Conn. 509, 523–24, 949 A.2d 1092 (2008) (In overruling a prior interpretation of the kidnapping statute, this court reasoned that "the issue presented by the defendant's claim is not one that is likely to have reached the top of the legislative agenda because the issue directly implicates only a relatively narrow category of criminal cases, that is, kidnapping cases in which the restraint involved is incidental to the commission of another crime. Moreover, in contrast to other matters that are subject to legislative regulation, it is uncertain whether the position that the defendant advocates would attract interested sponsors with access to the legislature."). Accordingly, I respectfully disagree with the majority's conclusion in part I B of its opinion that the plaintiff had standing with respect to counts four, six, nine and ten of the second amended complaint.

Because I would reverse the judgment of the trial court in its entirety, I respectfully concur in part and dissent in part.

[1] I do, however, agree with and join part I A of the majority opinion, which reverses the judgment of the trial court in favor of the plaintiff on his derivative claims. Because of my conclusions as to standing, I do not reach the reimbursement issues considered in part II of the majority opinion.

[2] I agree with the majority's rejection of the plaintiff's argument that the defendants' multiple admissions of liability for the LR Global bridge loan constituted judicial admissions that afforded him standing. I also agree with the majority's determination that the fact that the plaintiff suffered an injury did not resolve the standing question, which is predicated on whether his losses were separate and distinct from those suffered by Saunders Capital.

[3] "We note that §§ 34-124, 34-186 and 34-187 have been repealed, effective July 1, 2017. See Public Acts 2016, No. 16-97. We also note, however, that General Statutes § 34-243h (a), effective July 1, 2017, provides: 'A limited liability company has the capacity to sue and be sued in its own name and the power to do all things necessary or convenient to carry on its activities

and affairs.' " *Channing Real Estate, LLC* v. *Gates*, supra, 326 Conn. 138 n.6.

[4] In *Padawer*, on which the defendants rely heavily, the Appellate Court followed, inter alia, General Statutes (Rev. to 2017) §§ 34-134 and 34-167 (a), and held that the plaintiff in that case, who was the sole member of an LLC, lacked standing to bring a breach of contract action because it was the LLC that was "the contemplated party to the contract with the defendants, and . . . the assets intended to be transferred through the execution of that contract were assets belonging to the [LLC], rather than the plaintiff individually. If the defendants' alleged breach caused any harm, therefore, it was to [the] LLC, not to the plaintiff in his individual capacity. Although the plaintiff is the sole member of [the] LLC, that does not impute ownership of the [LLC's] assets to the plaintiff. . . . His position as sole member, also, does not provide him with standing to recover individually for harm to the [LLC]." (Citation omitted.) *Padawer* v. *Yur*, supra, 142 Conn. App. 818.

Although the Appellate Court's opinion in *Padawer* did not address the Principles of Corporate Governance, on which the majority relies, *Padawer* has been considered to be Connecticut's presently controlling decision with respect to the standing of a sole LLC member. See, e.g., *Lundstedt* v. *People's United Bank*, Docket No. 3:14-cv-01479 (JAM), 2015 WL 540988, *2 (D. Conn. February 10, 2015) (following *Padawer* and concluding, with respect to claims of illegal overdraft charges, that "a person who transfers his or her assets to an LLC has no standing to seek damages when those assets—now belonging solely to the LLC—are harmed," even though plaintiff was "sole manager/member" of LLC); *Bongiorno* v. *Capone*, 185 Conn. App. 176, 201–202, 196 A.3d 1212 ("The company is [an LLC] and is, therefore, a distinct legal entity from the plaintiff, who is simply a member of that entity. Even after the plaintiff became the sole member of the company, the company remained a distinct legal entity. Because a member of [an LLC] cannot recover for an injury allegedly suffered by [such] company, we conclude that the plaintiff lacked standing to pursue a claim of statutory theft in this case."), cert. denied, 330 Conn. 943, 195 A.3d 1134 (2018); see also *Scarfo* v. *Snow*, 168 Conn. App. 482, 504, 146 A.3d 1006 (2016) (following *Padawer* in intracorporate dispute between LLC members). Accordingly, for the benefit of the bar and bench, I believe that the majority's decision in this case effectively overrules *Padawer* and the line of cases that follow it.

[5] We summarized our case law articulating the distinction between direct and derivative actions in *May* v. *Coffey*, 291 Conn. 106, 967 A.2d 495 (2009), observing that: "In *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 281–82, 422 A.2d 311 (1979), we stated that [a] distinction must be made between the right of a shareholder to bring suit in an individual capacity as the sole party injured, and his right to sue derivatively on behalf of the corporation alleged to be injured. . . . Generally, individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the shareholder individually, but to the corporation—to the shareholders collectively. . . . In this regard, it is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding secondarily, deriving his rights from the corporation which is alleged to have been wronged. . . . It is, however, well settled that if the injury is one to the plaintiff as a stockholder, and to him individually, and not to the corporation, as where an alleged fraud perpetrated by the corporation has affected the plaintiff directly, the cause of action is personal and individual. . . . In such a case, the plaintiff-shareholder sustains a loss separate and distinct from that of the corporation, or from that of other shareholders, and thus has the right to seek redress in a personal capacity for a wrong done to him individually. . . . Thus, where an injury sustained to a shareholder's stock is peculiar to him alone, and does not fall alike upon other stockholders, the shareholder has an individual cause of action. . . .

"Subsequently, in *Smith* v. *Snyder*, [267 Conn. 456, 461, 839 A.2d 589 (2004)], we reaffirmed the general rule that [i]n order for a shareholder to bring a direct or personal action against the corporation or other shareholders, that shareholder must show an injury that is separate and distinct from that suffered by any other shareholder or by the corporation. . . . [A] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." (Citations omitted; internal quotation marks omitted.) *May* v. *Coffey*, supra, 291 Conn. 114–15; see also *Fink* v. *Golenbock*, 238 Conn. 183, 200–202, 680 A.2d 1243 (1996) (describing shareholder derivative action procedure under General Statutes § 52-572j).

I note that the legislature has specifically recognized this distinction in

the new Connecticut Uniform Limited Liability Company Act, which provides LLC members with the right to bring a direct action but requires the pleading and proof of "an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." General Statutes § 34-271 (b).

An example of a separate and distinct injury giving rise to direct standing to sue in the intracorporate LLC context is described in the Appellate Court's opinion in the companion case, *Wiederman* v. *Halpert*, 178 Conn. App. 783, 796–98, 176 A.3d 1242 (2017), appeal dismissed, 334 Conn. , A.3d (2019), in which the defendants were alleged to have misappropriated and converted funds invested by the plaintiff, who was induced to become a 50 percent member in their real estate development LLC. See also *Scarfo* v. *Snow*, 168 Conn. App. 482, 504, 146 A.3d 1006 (2016) (following *Padawer* and concluding that plaintiff lacked standing to bring action against only other member of LLC alleging mismanagement of project because, "if there was an injury, that injury was sustained by [the LLC] and then sustained by the plaintiff [and] [t]hus, the plaintiff's injury is not direct, and he has no standing to sue in his individual capacity").

[6] Consistent with part I A of the majority opinion, I recognize that the plaintiff's statutory alternative to a derivative action, which we do not recognize in the LLC context as a matter of statutory or common law, was a member initiated action pursuant to General Statutes (Rev. to 2017) § 34-187. But see General Statutes § 34-271a et seq. (provisions of Connecticut Uniform Limited Liability Company Act, effective July 1, 2017, providing statutory right to derivative action).

[7] I acknowledge that, as the majority observes, multiple courts have adopted the *Watson* v. *Button*/American Law Institute approach to close corporation standing, both before and after its endorsement by the American Law Institute. See, e.g., *Thomas* v. *Dickson*, 250 Ga. 772, 774, 301 S.E.2d 49 (1983); *Steelman* v. *Mallory*, 110 Idaho 510, 513, 716 P.2d 1282 (1986); *Barth* v. *Barth*, 659 N.E.2d 559, 562 (Ind. 1995); *Mynatt* v. *Collis*, 274 Kan. 850, 872–73, 57 P.3d 513 (2002); *Trieweiler* v. *Sears*, 268 Neb. 952, 983, 689 N.W.2d 807 (2004); *Durham* v. *Durham*, 151 N.H. 757, 763, 871 A.2d 41 (2005); *Crosby* v. *Beam*, 47 Ohio. St. 3d 105, 109–10, 548 N.E.2d 217 (1989); *Aurora Credit Services, Inc.* v. *Liberty West Development, Inc.*, 970 P.2d 1273, 1280–81 (Utah 1998); see also *Derouen* v. *Murray*, 604 So. 2d 1086, 1091 n.2 (Miss. 1992) (approving of approach in dicta).

[8] As I understand the authorities that embrace the *Watson* v. *Button*/American Law Institute approach, this doctrine would potentially apply to save a direct action that should have been brought derivatively in the manner contemplated in part I A of the majority opinion, namely, by the plaintiff to protect his interests that derive from his 50 percent membership in Revere Investments and Fund GP. See also footnotes 5 and 6 of this dissenting opinion.

[9] I also note my prudential concerns about the process that resulted in part I B of the majority opinion. Although the majority opinion is well researched, it presents a dramatic departure from the parties' briefs in this case, which do not address—either directly or tangentially by citation to applicable case law from other jurisdictions—the applicability of the *Watson* v. *Button*/American Law Institute principles that form the basis of the majority decision. Indeed, the plaintiff, whose brief obliquely appears to seek an exception from the general rule of *Channing Real Estate, LLC* v. *Gates*, supra, 326 Conn. 123, based on his provision to Saunders Capital of his personal funds that became the LR Global bridge loan, does not acknowledge the line of Appellate Court cases; see, e.g., *Padawer* v. *Yur*, supra, 142 Conn. App. 812; relied on by the defendants, that directly forecloses his standing in this case as the sole member of the LLC. See footnote 4 of this dissenting opinion. Although we have somewhat more latitude to act independently of the parties' briefs in this area in light of its implications on subject matter jurisdiction; see, e.g., *State* v. *Dort*, 315 Conn. 151, 161, 106 A.3d 277 (2014); *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 148–49, 84 A.3d 840 (2014); I would not do so without supplemental briefing from the parties and the issuance of appropriate amicus curiae invitations, given the significant effect of the majority opinion on Connecticut's body of corporate law, particularly as it relates to our state's many close corporations and small LLCs.

[10] I disagree with the majority's reliance on corporate veil piercing principles in support of "[a]llowing investors to disregard the corporate form in order to recover for corporate losses owed to them individually . . . ." In rejecting a similar argument that, "because [the defendant] is the sole owner

of the LLC and the business operated from his residence the LLC can be disregarded," the Kentucky Supreme Court observed that, "[w]hile it is true that there are limited instances where an LLC's separate entity status may be disregarded in the interest of equity, this is not one of those cases." *Turner* v. *Andrew*, supra, 413 S.W.3d 276. As the Kentucky court observed, "[p]iercing the corporate veil is an equitable doctrine invoked by courts to allow a creditor recourse against the shareholders of a corporation. . . . The doctrine can also apply to [LLCs]." (Citation omitted; internal quotation marks omitted.) Id., 276–77; see, e.g., *McKay* v. *Longman*, 332 Conn. 394, 432–33, 211 A.3d 20 (2019) (describing equitable nature and purpose of corporate veil piercing under Connecticut law). As the Kentucky court notes, the majority's approach in essence calls for "insider reverse [veil] piercing," which would be "employed in that rare instance where equity is perceived to require disregard of the entity. Thus, the estate of a sole corporate shareholder/LLC member may be allowed to recover as an 'insured' under a policy issued to the entity . . . or a sole shareholder or LLC member may be allowed to claim the protection of a usury statute even though the loan was to the entity . . . . In all of the limited number of insider reverse [veil] piercing cases, strong public policy considerations have been at the heart of the court's decision." (Citations omitted.) *Turner* v. *Andrew*, supra, 277. I believe that there are no significant public policy reasons to disregard the corporate form in this case, which simply presents a matter of the wrong plaintiff bringing the claims at issue. See id. ("[The defendant] created an LLC and it appears that it was conducting the trucking business at issue. By law, the only appropriate plaintiff to assert the lost business damages claim was the LLC . . . .").

––––––––––––––––––––––––––––